IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action File No. 8:17-cv-00606 (DOC) (KES)

CRAFTWOOD II, INC., dba BAY HARDWARE, individually and as representative of all others similarly situated,

    Plaintiff.

v.

WURTH LOUIS & COMPANY, a California corporation, and Does 1 through 1000,

    Defendant.

_____

**PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE: (1) CONTEMPT CITATION; (2) ORDER COMPELLING COMPLIANCE WITH SUBPOENA; AND (3) MONETARY SANCTIONS**
_____

Pursuant to Federal Rules of Civil Procedure, Rules 37 and 45, Plaintiff Craftwood II, Inc. ("Craftwood"), moves the Court for an order requiring Westfax, Inc. ("Westfax"), to show cause why (1) a contempt of court citation should not issue for its failure to comply with Plaintiff's subpoena *duces tecum*, (2) the Court should not issue an order compelling Westfax to comply with the subpoena, and (3) the Court should not issue an order awarding Craftwood monetary sanctions in the amount of $17,512.00 for the attorney's fees and costs incurred by Craftwood in bringing this Motion.

This Motion is made on the grounds that Westfax has failed and refuses to comply with a valid subpoena *duces tecum* issued by Craftwood in connection with a class action lawsuit entitled *Craftwood II, Inc. v. Wurth Louis & Company*, Case

-1-

No. 8:17-cv-00606 (DOC) (KES), which is currently pending in the United States District Court for the Central District of California.

In support of this Motion, Craftwood submits the Declaration of Scott O. Luskin and the Declaration of Frank W. Suyat and states and shows the Court the following:

## I.      Introduction

Craftwood II, Inc., is a hardware retailer in California. Craftwood has been bombarded with junk faxes from Wurth Louis & Company. Earlier this year, Craftwood filed a putative class action against Wurth asserting violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") to stop this illegal activity.

During informal discovery Craftwood learned that Wurth used Westfax, Inc., a Colorado company, to blast the junk faxes. Craftwood subpoenaed Westfax to seek records regarding these transmissions. But Westfax has not produced them. Craftwood now applies to this Court to assist in obtaining these critical documents.

There is no reason for Westfax to withhold the requested documents. The subpoena was validly served, and Westfax did not object, seek to quash, or obtain a protective order. Westfax simply refused to produce documents because Wurth sent a letter informally objecting to the subpoena and told Westfax not to produce any responsive documents. But Wurth's "objection" does not excuse Westfax from complying. Craftwood now asks this Court to order Westfax to show cause

why (1) a contempt of court citation should not issue for its failure to comply with the subpoena, (2) it should not be compelled produce the subpoenaed documents, and (3) the Court should not award Craftwood monetary sanctions in the amount of $17,512.00 for the attorney's fees and costs it incurred in bringing this Motion.

## II. Craftwood's Subpoena

### A. Craftwood's Subpoena Seeks Essential Documents

Earlier this year, Craftwood filed a class action entitled *Craftwood II, Inc. v. Wurth Louis & Company,* Case No. 8:17-cv-00606 (DOC) (KES), which is pending in the United States District Court for the Central District of California, to recover damages for Wurth's TCPA violations. (Luskin Decl. ¶ 2, Ex. A.) The TCPA prohibits the transmission of unsolicited facsimile advertisements, commonly known as "junk faxes," and fixes a minimum mandatory statutory damage of $500 per violation. 47 U.S.C. § 227(b). The law also requires advertisers to include in their faxed advertisements a clear and conspicuous notice that discloses to recipients their legal right to stop future junk faxes and the legal requirements for exercising that right. *Id*.

Craftwood alleges that Wurth violated the TCPA by sending unsolicited junk fax advertisements to the putative class and by failing to include disclosures of the recipients' right to opt-out of receiving junk faxes. (Luskin Decl. ¶ 3.) Wurth disclosed that it engaged Westfax, a professional fax broadcaster, to blast the faxes it sent to Craftwood and the putative class. (*Id*. ¶ 4.) Craftwood then

-3-

issued a September 6 subpoena to Westfax at its location in Centennial, Colorado, seeking documents relating to Westfax's facsimile-related services to Wurth.  (*Id.* ¶ 5.)  Craftwood later served an Amended Subpoena (the "Subpoena") on October 2, 2017.  (*Id.* ¶ 5, Ex. B.)

The Subpoena is crucial to the case.  It seeks, among other things, the production of faxes Westfax sent for or on behalf of Wurth, lists of fax transmissions relating to Wurth's faxes, Westfax user guides and policies and procedures, reports of faxes sent, exception reports, communications and agreements between Wurth and Westfax, invoices to Wurth, and documents relating to opt-out requests from fax recipients.  (Luskin Decl., Ex. B at 8-9.)

Documents responsive to each of the Subpoena's requests are necessary for Craftwood to pursue its TCPA claims.  (*Id.* ¶ 6.)  Records of Westfax's fax transmissions for or on behalf of Wurth, and related documents, will identify the putative class members and the number of successful fax transmissions.  Indeed, courts have found fax broadcasters' transmission records to be reliable, admissible, and sufficient to identify the class.  *See, e.g., Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016); *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014); *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *5 (N.D. Ill. Jan. 4, 2013).  Courts have also held that fax broadcaster transmission reports, combined with the fax lists, evidence the number of successful transmissions to each fax number.  *See, e.g., Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 632-34 (6th Cir 2015); *American Copper & Brass*, 757 F.3d at 545; *Paldo Sign*

*and Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 882-883 (N.D. Ill. 2014); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc*., 296 F.R.D. 299, 309 (D.N.J. 2013). Identifying the successful transmissions is necessary to prove up the $500 per violation statutory damages. § 227(b)(3).

The subpoenaed documents may also be needed to determine the content of Wurth's fax advertisements. Indeed, the Subpoena seeks all Wurth faxes there were attempted to be sent through Westfax. (Luskin Decl., Ex. B at Requests 1-2.) The TCPA does not regulate faxes generally, but only facsimile advertising. *See* § 227(a)(5). Only by observing the faxes themselves can Craftwood assess whether the faxes are "advertisements." Similarly, Craftwood needs the faxes to determine whether they contain the opt-out disclosure mandated by the TCPA.

The Subpoena also seeks communications and agreements between Wurth and Westfax, and documents relating to statements or agreements that faxes would comply with applicable law or regulations, including the TCPA. (Luskin Decl., Ex. B at 8-9.) Among other things, these documents are relevant to damages in the case; statutory damages may be enhanced under the TCPA if the defendant commits a knowing or willful violation of the statute or FCC regulations. § 227(b)(3). From past experience, Craftwood's counsel knows that Westfax's agreements contain extensive notice regarding the TCPA requirements, making these crucial pieces of evidence. (Luskin Decl. ¶ 6.)

### B. Craftwood's Efforts To Informally Obtain Compliance With The Subpoena

The Subpoena called for the production of responsive documents on October 16, 2017, at First Records Retrieval c/o Dispatch Legal Services, 5910 South University Blvd., Unit C18-146, Greenwood Village, Colorado 80121-883. (Luskin Decl., Ex. B.) Westfax was served with the Subpoena on October 5, 2017. (*Id*., Ex. D.)

On October 4, 2017, having received a copy of the Subpoena on October 2, 2017, Wurth's counsel sent a letter to Craftwood's counsel indicating that Wurth objected to two requests in the Subpoena requesting copies of faxes stored electronically by Westfax since those faxes are communications that are supposedly protected from disclosure by the Stored Communications Act, 18 U.S.C. 2702. (Luskin Decl. ¶ 7, Exs. C, E.)[1] Wurth's counsel also contacted Westfax to ask Westfax to refrain from producing responsive documents on the basis of the objection. (*Id*.) Westfax indicated that it was Westfax's policy to withhold documents where there is a pending objection. (*Id*. ¶ 8.) Westfax, therefore, explained to Craftwood that it would not produce any documents until it received an order compelling production or Wurth withdrew the objection. (*Id*.)

---

[1] Craftwood and Wurth discussed the veracity of the Stored Communications objection in connection with the original subpoena. (Luskin Decl. ¶ 8.) Craftwood provided authority that the Stored Communications Act does not apply, but even if it did, certain exceptions would permit disclosure of the requested items. (*Id*.) Wurth initially agreed to a limited extent, acknowledging that Craftwood at least could obtain any faxes Wurth sent to it, but ultimately would not withdraw its objection. (*Id*. ¶¶ 8-9.)

Craftwood attempted to resolve the objection informally. Craftwood's attorney, Scott Luskin, spoke with both Wurth's counsel and Westfax's counsel to limit the issues in dispute. It appeared that everyone agreed Westfax could produce responsive documents for all categories other than requests 1 and 2. For those two requests, Westfax would confirm whether it even had responsive documents, to see if there was anything for the parties to dispute. Craftwood then sent a confirmation email to Wurth and Westfax. But rather than confirm, counsel for Wurth refused to "permit" Westfax to release such documents, indicating vaguely in an October 25 email that Wurth had "reconsidered its position," and could not confirm that such documents could be produced by Westfax. (*Id.*)

Westfax never objected to the Subpoena. (Luskin Decl. ¶ 11.) Neither Westfax nor Wurth filed a motion to quash or motion for a protective order. (*Id.*) Nonetheless, Westfax has not produced any documents apparently based on Wurth's vague assertion of a reconsidered position. (*Id.*)

Before filing this Motion, Craftwood's counsel reached out one last time to obtain a resolution. (Suyat Decl. ¶ 2, Ex. A.) Craftwood explained that it would need to seek contempt sanctions under Rule 45 if the documents were not produced. (*Id.*) But Westfax stood on its previously articulated policy and did not respond to Craftwood's counsel. (Suyat Decl. ¶ 3)

### III. Argument

#### A. The Subpoena Was Validly Issued And Served

Rule 34 of the Federal Rules of Civil Procedure authorizes parties in civil actions to request from non-parties, by Rule 45 subpoena, "documents and tangible things" within the scope of discovery permitted by Rule 26(b). *See* FED. R. CIV. PROC. 34(c).

Here, the Subpoena to Westfax was validly issued and served and satisfies all Rule 45(a) form and content requirements. *See* FED. R. CIV. PROC. 45(a); (Luskin Decl., Exs. B & C.) Westfax was served on October 5, well in advance of the deadline to produce documents on October 16, 2017. (Luskin Decl., Ex. D.) This service provided more than the required "reasonable time" for Westfax to comply. *See* FED. R. CIV. PROC. 45(d)(3)(A)(i).[2] And notice was served on Wurth on October 2, 2017. (Luskin Decl. ¶ 5, Ex. C.) The place of the deposition and document production was First Records Retrieval c/o Dispatch Legal Services, 5910 South University Blvd., Unit C18-146, Greenwood Village, CO 80121-883, which is approximately 5 miles from the address of Westfax's Custodian of Records, to which the Subpoena was issued, located at 9200 E. Mineral Ave., Suite 275, Centennial, Colorado 80112. (*See id.* ¶ 5, Ex. B); FED. R. CIV. PROC.

---

[2] The requests were actually the same as those in the original subpoena served September 8, 2017. (Luskin Decl. ¶ 5.) So Westfax had knowledge of the requests for another 27 days. Craftwood did not attempt to enforce the original subpoena solely because it requested compliance outside the 100 mile requirement. (*Id.*) The amended subpoena corrected this issue.

45(d)(3)(A)(ii).  These facts should leave no doubt the Subpoena is enforceable.

### B. Westfax and Wurth Failed To Seek Relief From The Subpoena

Neither Westfax nor Wurth sought relief from the Subpoena.  (Luskin Decl. ¶¶ 10-11.)    Rule 45(d)(2)(B)provides that a nonparty, like Westfax, has 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service to serve written objections. FED. R. CIV. PROC. 45(d)(2)(B).  But Westfax did not object.  (Luskin Decl. ¶ 6.)  Westfax has therefore waived its objections, if any.  *See* FED. R. CIV. PROC. 45(c)(2)(B); *In re DG Acquisition Corp*., 151 F.3d 75, 81 (2d Cir. 1998) (objections to subpoena waived by delay).

Wurth's letter "objection" also does not excuse Westfax's compliance with the Subpoena.   Rule 45 states that only "[a] person commanded" to produce or permit inspection—Westfax here—may object in writing to the subpoena. FED. R. CIV. PROC. 45(d)(2)(B); *see also McCoy v. Southwest Airlines Co*., 211 F.R.D. 381, 384-85 (C.D. Cal. 2002) (objections by defendants were invalid, because only subpoenaed nonparties can prevent disclosure by objection under Rule 45(d)(2)(B)); *Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd*., 212 F.R.D. 395, 398 (N.D. Ill. 2002) ("a party ordinarily has no standing to object to a subpoena issued to a non-party").  Wurth's letter therefore cannot prevent disclosure.  *Id*.

Making matters worse, Westfax and Wurth have not filed any motion to quash the Subpoena or moved for a protective order.  (Luskin Decl. ¶¶ 10-11.)

Pursuant to Rule 45(d)(3), the court where compliance is required may quash or modify a subpoena only if a party "timely" moves to quash or modify. Generally, courts have interpreted "timely" as "within the time set in the subpoena for compliance." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270, 278, 278 n. 6 (D.D.C. 2002) (citing *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002)). Similarly, motions for protective orders relating to a subpoena must be brought before the time set in the subpoena for compliance. *United States v. Int'l Bus. Machines Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976). Because the time set in the Subpoena for compliance has passed, so too has the deadline for Westfax and Wurth to bring a motion to quash or for a protective order.

Because there were no valid objections or timely motions, Westfax and Wurth have no grounds to prevent production of responsive documents.

### C. The Court Should Issue An Order Requiring Westfax To Show Cause Why A Contempt Of Court Citation Should Not Issue

Because Westfax refuses to produce response documents, this Court should issue an order requiring Westfax to show cause why it is not in contempt of court. Rule 45 establishes this very framework, providing that "[t]he court for the district where compliance is required…may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." FED. R. CIV. PROC. 45(g); *see also* 2 James Wm. Moore *et al.*, Moore's Federal Practice 20.04[8], at 20-42 (3d ed. 2006) (To enforce a subpoena, a party

-10-

should file an Motion for an order to show cause why a contempt citation should not issue); *United States Securities & Exch. Comm'n v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010) ("[A]ll discovery subpoenas are contempt-sanctionable orders of the court whether issued in blank by the clerk or by an attorney as an officer of the court.").

Westfax has no adequate excuse to avoid a contempt citation. As explained above, Westfax did not timely object to the Subpoena or move to quash or for a protective order. The Subpoena was validly issued and served. *See In re Rosen*, 542 B.R. 177, 179 (Bankr. E.D. Pa. 2015) (deficiencies in the subpoena may be an adequate excuse). And Westfax never alleged that it was somehow unable to comply. *See LHF Prods., Inc. v. Doe-73.37.70.66*, No. 3:17-CV-241-AC, 2017 WL 3130121, at *2 (D. Or. July 21, 2017) (inability to comply is an adequate excuse). Under these circumstances, Westfax's failure to produce any documents responsive to the Subpoena is a contempt of court. *See Sec. Investor Prot. Corp. v. Executive Sec. Corp.*, 433 F. Supp. 470, 474 (S.D.N.Y. 1977) (failure to comply with valid subpoena is *prima facie* evidence of contempt). The Court should issue an order requiring Westfax to show cause why a contempt citation should not issue for its failure to comply with the Subpoena.

## D. The Court Should Issue An Order Requiring Westfax To Show Cause Why It Should Not Be Compelled To Comply With The Subpoena

In addition to contempt, the Court should issue an order requiring Westfax to

-11-

show cause why it should not be compelled to comply with the Subpoena. Rule 45 provides that "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." FED. R. CIV. PROC. 45(d)(2)(B)(i); *In re Denture Cream Products Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013).

Because Westfax is a Colorado company, the Subpoena demands compliance in this district. Craftwood, therefore, asks this Court to compel immediate compliance. As explained above, the Subpoena requests crucial documents, was validly issued and served, and Westfax has no valid ground to refuse production. The Court should therefore issue an order requiring Westfax to show cause why it should not be compelled to comply with the Subpoena.

### E.     The Court Should Issue An Order Requiring Westfax To Show Cause Why Monetary Sanctions Should Not Be Awarded

In addition to being held in contempt and compelled to produce the subpoenaed documents, the Court should also require Westfax to show cause why it should not pay for Craftwood's expenses and attorney fees incurred in bringing this Motion.

Craftwood is entitled to recover its expenses, including attorney's fees and costs, incurred as a result of filing this Motion under Rule 37(a)(5). *See* FED. R. CIV. PROC. 37(a)(5) ("If the motion [to compel] is granted ... the court must, after giving an opportunity to be heard, require the party or deponent whose conduct

necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."); *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-CV-2902-JEC, 2014 WL 4308355, at *1 (S.D.N.Y. Aug. 26, 2014) (awarding moving party attorney's fees and costs incurred as a result of filing motion to compel compliance with third party subpoena under Rule 37(a)(5)).

Attorney's fees and costs are also available as contempt sanctions for a party's failure to comply with a subpoena. *See, e.g.*, *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("[A]subpoena duces tecum is itself a court order, and noncompliance may warrant contempt sanctions."); *General Ins. Co. of America v. Eastern Consolidated Utilities, Inc.*, 126 F.3d 215, 220 (3rd Cir. 1997) (ordering nonparty to pay expenses and attorney fees for failure to comply with order re subpoena). Monetary contempt sanctions are warranted here because Westfax has refused, without any valid legal justification, to produce the subpoenaed documents. Indeed, Westfax did not object to the Subpoena, and refused to produce any documents despite good faith efforts by Craftwood in which Craftwood, among other things, suggested that Westfax produce the documents that were not implicated by Wurth's (ineffective) objection regarding the Stored Communications Act. (Luskin Decl. ¶¶ 8-9.)

As set forth in the Declaration of Scott O. Luskin and Frank W. Suyat, over 35.4 hours were spent researching and preparing this Motion, including the supporting declaration and exhibits. (Luskin Decl. ¶ 12, Suyat Decl. ¶ 3.) It is anticipated that, at a minimum, an additional five hours will be spent in connection

with preparing a reply brief and three hours handling the hearing on this matter. (*Id.*) Therefore, Craftwood requests that the Court issue an order requiring Westfax to show cause why it should not be required to pay Craftwood's attorney's fees and costs incurred in bringing this Motion in the amount of $17,512.00.

## IV.   Conclusion

For the foregoing reasons, Craftwood's Motion should be granted and the Court should issue an order to Westfax, Inc., to appear and to show cause why (1) a contempt of court citation should not issue for its failure to comply with Plaintiff's Subpoena; (2) Westfax should not be ordered to comply with the Subpoena; and (3) Craftwood should not be awarded monetary sanctions in the amount of $17,512.00 for its fees and costs incurred in bringing this Motion.

DATED: December 5th, 2017       DILL DILL CARR STONBRAKER & HUTCHINGS, P.C.

/s/ *Frank W. Suyat*
Frank W. Suyat, #27514
Patrick D. Tooley. #15273
Attorneys for Plaintiff
455 Sherman Street, Suite 300
Denver, CO 80203
Telephone: (303) 777-3737
Facsimile: (303) 777-3823
E-mail: fsuyat@dillanddill.com
           pdtooley@dillanddill.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2017, I provided a copy of the foregoing **PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE: (1) CONTEMPT CITATION; (2) ORDER COMPELLING COMPLIANCE WITH SUBPOENA; AND (3) MONETARY SANCTIONS** by sending a copy of same via first class U.S. Mail, postage prepaid and via email to the following address:

| | |
|---|---|
| Livia M. Kiser<br>lkiser@sidley.com<br>Courtney A. Hoffmann<br>choffmann@sidley.com<br>Raechel Bimmerle<br>rbimmerle@sidley.com<br>Tom Kayes<br>tkayes@sidley.com<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Tel: (312) 853-7000<br>Fax: (312) 853-7036 | Attorneys for Defendant<br>Wurth Louis and Company |
| Michael L. Mallow<br>mmallow@sidley.com<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street, Suite 4000<br>Los Angeles, California 90013<br>Tel.: (213) 896-6666<br>Fax: (213) 896-6600 | Attorneys for Defendant<br>Wurth Louis and Company |
| William Hayes, III<br>257 Jackson Street<br>Denver, CO 80206<br>Tel.: (303) 514-0658<br>Email: sqhayes@aol.com | Attorney for Westfax, Inc. |

/s/ *Samantha Foley*
Samantha Foley