IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 8:17-cv-00606 (DOC) (KES)

CRAFTWOOD II, INC., dba BAY HARDWARE, individually and as
representative of all others similarly situated,

      Plaintiff,

v.

WURTH LOUIS & COMPANY, a California corporation, and Does 1 through
1000,

      Defendants.

---

## DECLARATION OF SCOTT O. LUSKIN IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE: (1) CONTEMPT CITATION; (2) ORDER COMPELLING COMPLIANCE WITH SUBPOENA; AND (3) MONETARY SANCTIONS

---

I, Scott O. Luskin, declare as follows:

1.     I am a partner with Payne & Fears LLP, attorneys of record for Plaintiff, Craftwood II, Inc. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2.      Earlier this year, Craftwood filed a class action lawsuit entitled *Craftwood II, Inc. v. Wurth Louis & Company,* which is currently pending in the United States District Court for the Central District of California before the Honorable David O. Carter, Case No. 8:17-cv-00606 (DOC) (KES), to recover damages for Wurth's unlawful junk fax operations in violation of the Telephone Consumer Protection Act. It was originally filed in California state court, but the defendant removed it. A true and correct copy of the Complaint is attached hereto as Exhibit "A."

3.      Craftwood alleges in the case that Wurth violated the Telephone Consumer Protection Act of 1991 47 U.S.C. § 227 ("TCPA") by sending unsolicited junk fax advertisements, and by failing to include disclosures of the recipients' ability to opt-out of receiving junk faxes to a putative class of recipients of Wurth's unsolicited junk fax advertisements.

4.      During informal discovery, Wurth disclosed that it engaged Westfax, Inc., to blast the faxes it sent to Craftwood and other members of the putative class.

5.      Craftwood therefore issued a subpoena *duces tecum* to Westfax, dated September 6, 2017, that sought documents relating to Westfax's facsimile-related services to Wurth. The subpoena was served on September 8, 2017. After receiving a letter from Wurth's counsel stating that the subpoena was invalid because it called for production more than 100 miles from Westfax's residence, Craftwood issued an Amended Subpoena (the "Subpoena") to Westfax on October 2, 2017. The requests in the Subpoena were identical to those contained in the

original subpoena dated September 6, 2017. A true and correct copy of the Subpoena Craftwood issued to Westfax on October 2, 2017, is attached hereto as Exhibit "B." On October 2, 2017, Courtney Porter, a paralegal at Payne & Fears, emailed a copy of the Subpoena to Wurth's counsel, Tom Kayes, carbon copying myself. A true and correct copy of Ms. Porter's October 2, 2017, email is attached hereto as Exhibit "C." The Subpoena was served on Westfax on October 5, 2017. A true and correct copy of the proof of service of the Subpoena, showing service on Westfax on October 5, 2017, is attached hereto as Exhibit "D." The Subpoena called for the production of responsive documents on October 16, 2017, at First Records Retrieval c/o Dispatch Legal Services, 5910 South University Blvd., Unit C18-146, Greenwood Village, Colorado 80121-883.

6.      The Subpoena seeks documents that are critical to Craftwood's claims in the case. Indeed, records of Westfax's fax transmissions for or on behalf of Wurth and related documents are necessary for Craftwood to identify, among numerous other things, the putative class members, the number of successful fax transmissions, and the content of Wurth's fax advertisements. And communications and agreements between Wurth and Westfax, including documents relating to statements or agreements that faxes would comply with applicable law or regulations, including the TCPA, go directly to the issue of whether Wurth willingly violated the TCPA in connection with its junk fax operation. Based on my past experience prosecuting junk fax class actions, Westfax's agreements contain extensive notice regarding the TCPA requirements, which makes these agreements crucial pieces of evidence.

7.    On October 4, 2017, I received an email from Wurth's counsel, Tom Kayes, attaching a letter that explained that Wurth objected to the Subpoena because it sought certain documents that Wurth contends are protected from disclosure by the Stored Communications Act.  A true and correct copy of Mr. Kayes' October 4, 2017, email and the attached letter are attached hereto as Exhibit "E."

8.    Throughout this time, I met and conferred with Mr. Kayes via telephone in order to resolve Wurth's objection to the Subpoena. We discussed the veracity of Wurth's objection on grounds of the Stored Communications Act in connection with the original subpoena.  I provided Mr. Kayes authority that the Stored Communications Act does not apply, but even if it did, certain exceptions would permit disclosure of the requested items.   I also spoke to Westfax's outside counsel, William Hayes, to discuss Wurth's objection.  Mr. Hayes indicated that Wurth had contacted him and asked that Westfax refrain from producing any documents responsive to the Subpoena on the basis of Wurth's objection.  Mr. Hayes also indicated that it was Westfax's policy not to produce documents in response to a subpoena when there is a pending objection.  Therefore, Mr. Hayes stated that Westfax would not produce any documents until Wurth indicated that it was no longer objecting to the Subpoena.

9.    Although Mr. Kayes and I could not resolve our disagreement regarding the applicability of the Stored Communications Act, I requested that Westfax produce the documents that were not impacted by Wurth's objection.  It appeared that everyone agreed that Westfax could produce responsive documents

for all categories other than requests 1 and 2 in the Subpoena, which Wurth contended were barred by disclosure based on the Stored Communications Act. For those two requests, Westfax would confirm whether it even had responsive documents to see if there was anything for the parties to dispute. I then sent a confirmation email to Wurth and Westfax to confirm this arrangement. But rather than confirm, counsel for Wurth refused to "permit" Westfax to release such documents, indicating vaguely in an October 25 email that Wurth had "reconsidered its position," and could not confirm that such documents could be produced by Westfax. A true and correct copy of the email chain between myself and Mr. Kayes reflecting this exchange is attached hereto as Exhibit "F."

10.     Despite identifying an "objection" to the Subpoena via Mr. Kayes' October 4, 2017, letter, Wurth has not filed a motion to quash or a motion for a protective order with respect to the Subpoena.

11.     Westfax has not served any objections to the Subpoena. Westfax also has not filed any motion to quash or motion for a protective order in connection with the Subpoena.  Nonetheless, to date, Westfax has not produced any documents pursuant to the Subpoena.

12.     I spent over 8 hours preparing and finalizing this Motion. My colleague, Philip K. Lem, a senior associate at Payne & Fears LLP, spent over 20 hours researching and preparing this Motion.  My hourly rate is $470 per hour, and Mr. Lem's hourly rate is $445.  I anticipate spending 5 hours preparing the reply, and there may be more time spent appearing at a hearing if the Court

requires one.  Thus, the total cost for my time and Mr. Lem's time in connection with this Motion is at least $15,010.   I will provide a supplemental declaration with the reply, identifying additional time spent.  Also, if the Court desires additional information, I can submit the detailed attorney time entry records reflecting Mr. Lem's and my time spent preparing this Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted this 5th day of December 2017.

*/s/ Scott O. Luskin*
Scott O. Luskin

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**03/07/2017** at 06:37:13 PM

Clerk of the Superior Court
By Georgina Ramirez,Deputy Clerk

1  C. Darryl Cordero, Bar No. 126689
   cdc@paynefears.com
2  Matthew K. Brown, Bar No. 252503
   mkb@paynefears.com
3  PAYNE & FEARS LLP
   1100 Glendon Avenue, Suite 1250
4  Los Angeles, California 90024
   Telephone: (310) 689-1750
5  Facsimile: (310) 689-1755

6  Attorneys for Plaintiff Craftwood II, Inc.,
   a California corporation, dba Bay Hardware,
7  individually and as representative of all
   others similarly situated

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

Judge Thierry Patrick Colaw

11

Craftwood II, Inc., a California corporation,
12  dba Bay Hardware, individually and as
   representative of all others similarly situated,
13

               Plaintiff,
14
       v.
15
Wurth Louis & Company, a California
16  corporation, and Does 1 through 1000,
17
               Defendants.

Case No.  30-2017-00907307-CU-MC-CXC
          CX-105

**CLASS ACTION**

**Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations and for Declaratory Relief; Exhibits; Demand for Jury Trial**

**[Cal. Civ. Proc. Code §§ 382, 410; Cal. R. Ct. 3.760]**

18

19

20       Plaintiff Craftwood II, Inc., dba Bay Hardware ("Bay Hardware"), brings this action on

21  behalf of itself and all other similarly situated parties, and alleges:

22

23                              **Introduction**

24

25       1.       More than two decades ago the Telephone Consumer Protection Act of 1991, 47

26  U.S.C. § 227 ("TCPA"), was enacted into law.  The law responded to countless complaints by

27  American consumers and businesses about the cost, disruption and nuisance imposed by junk

28  faxes.  The law prohibited advertisers from transmitting facsimile advertising without prior

*PAYNE & FEARS LLP*
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

**EXHIBIT**

*A*

tabbies®

Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations
[Class Action] and for Declaratory Relief; Exhibits; Demand for Jury Trial

1    express invitation or permission of the recipient.  In 2005, because consumers and businesses

2    continued to be besieged with junk faxes, Congress strengthened the law by enacting the Junk Fax

3    Prevention Act of 2005 ("JFPA" or the "Act").  As amended, the law requires advertisers to

4    include in their faxed advertisements a clear and conspicuous notice that discloses to recipients

5    their legal right to stop future junk faxes and the legal requirements for exercising that right.

6

7         2.      Bay Hardware brings this class action to recover damages for and enjoin repeated

8    junk faxing by Defendant Wurth Louis & Company, in direct violation of the TCPA and the

9    regulations promulgated by the Federal Communications Commission.  Within four years

10   preceding the filing of this Complaint, Defendant has sent a large number of junk faxes to Bay

11   Hardware, including, but not limited to, the facsimile transmission of advertisements to Plaintiff's

12   telephone facsimile number, true and correct copies of which are attached hereto as Exhibits 1

13   through 10.

14

15                    **Standing and Jurisdiction**

16

17        3.      This Court has subject matter jurisdiction over this matter and Bay Hardware has

18   standing to seek relief in this Court because 47 U.S.C. § 227(b)(3) authorizes commencement of

19   an action in an appropriate state court to obtain damages in the minimum amount of $500 for each

20   violation of the TCPA, to obtain injunctive relief, or for both such actions.

21

22        4.      Venue is proper in this Court because Defendant sent illegal junk faxes to Plaintiff

23   in Orange County and because some of the class members reside in California.

24

25        5.      Plaintiff sustained concrete and actual injury as a result of Defendant's actions and

26   omissions because Defendant's junk faxes, among other things, wrongfully occupied Plaintiff's

27   facsimile telephone line; caused Plaintiff's fax line to be unavailable for legitimate business use;

28   wasted time to manage and dispose of Defendant's junk faxes; consumed and wasted Plaintiff's

PAYNE & FEARS LLP

ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-2-

electricity, paper and toner; invaded Plaintiff's privacy rights; and denied Plaintiff its statutory right to information about how to stop junk faxes.  Plaintiff did not give Defendant prior express invitation or permission to send fax advertisements, including, but not limited to Exhibits 1 through 10.

**The Parties**

6.     Plaintiff Craftwood II, Inc., is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of California, doing business as Bay Hardware, with its principal place of business in Seal Beach, California.  Bay Hardware is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((562) 594-4054) to which Defendant sent junk faxes, including, but not limited to, the faxes attached as Exhibits 1 through 10 to this Complaint.

7.     Defendant Wurth Louis & Company ("WLC"), is a corporation organized and existing under the laws of the state of California, and having its principal place of business in Brea, California.  At all relevant times, WLC has been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

8.     **Defendant Does 1 Through 1,000**. Plaintiff is unaware of the true names and capacities of Does 1 through 1,000, inclusive, and therefore sues such defendants by their fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of the fictitiously named defendants when they are ascertained. Plaintiff is informed and believes and upon such information and belief alleges that:

A.     Does 1 through 500, inclusive, are, and at all times relevant hereto were, businesses, individuals and/or other entities that are senders, via facsimile transmission, of the unsolicited advertisements at issue and are therefore liable or otherwise responsible for the

-3-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1   violations and damages alleged herein.

2

3       **B.**     Does 501 through 1,000, inclusive, are, and at all times relevant hereto

4   were, fax broadcasters that, for compensation, physically sent via facsimile transmission the

5   unsolicited advertisements at issue on behalf of each of Defendants. Plaintiff is informed and

6   believes and upon such information and belief alleges that Does 501 through 1,000 are liable or

7   otherwise responsible for the violations and damages alleged herein because these Doe defendants

8   had a high degree of involvement in the content, preparation and/or transmission of the unsolicited

9   advertisements at issue and/or had actual notice of the unlawful activity constituting the violations

10  alleged herein and failed to take steps to prevent the same.

11

12      **C.**     As used herein, the term "Defendants" refers, jointly and severally, to

13  defendant Wurth Louis & Company and Does 1 through 1,000, inclusive.

14

15      9.      **Agency.**  Plaintiff is informed and believes, and upon such information and belief

16  alleges, that at all times relevant hereto, each Defendant was and now is the agent and/or

17  representative of each remaining Defendant, and in doing the acts alleged herein was acting within

18  the scope of such agency and/or representation.

19

20              **The TCPA's Prohibition of Junk Fax Advertising**

21

22      10.     By the early 1990s advertisers had exploited facsimile telephone technology to

23  blanket the country with junk fax advertisements.  This practice imposed tremendous disruption,

24  annoyance, and cost on the recipients.  Among other things, junk faxes tie up recipients' telephone

25  lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and

26  require recipients to sort through faxes to separate legitimate fax communications from junk

27  advertisements and to discard the latter.

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-4-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

11.     Congress responded to the problem by passing the TCPA in 1991.  The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'"  H.R. Rep. No. 102-317 (1991).  It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

12.     The original law did not achieve its objectives, however.  In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop.[1]  Congress responded by strengthening the law through the JFPA.  This 2005 amendment for the first time required advertisers to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements").[2]  To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement, separate from the advertising copy and any other disclosures, that informs recipients of their right to stop future junk faxes and of the legal requirements for an effective opt-out request.  The notice must be distinguishable from the advertising copy by use of bolding, italics and different font.

**WLC's Illegal Junk Fax Program**

13.     WLC is a national distributor of products to the woodworking industry.  Within the past four years, WLC has adopted and implemented an illegal junk fax advertising program to promote the sale of its property, goods and services.  Among the many services promoted by

---

[1]     FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).

[2]     *See* § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

WLC's illegal junk faxes is WLC's website, www.wurthlac.com, which advertises the company and its property, goods and services.  All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of WCL's overall marketing and promotional activities and sale of property, goods and services.  These illegal junk faxes include, but are not limited to, Exhibits 1 through 10 to this Complaint.

14.     Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant transmitted the faxes that are the subject of this lawsuit without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations.  Bay Hardware did not give Defendant prior express invitation or permission to send facsimile advertisements, including, but not limited to, Exhibits 1 through 10.

15.     In the course of its illegal fax advertising campaigns WLC failed to comply with the Opt-Out Notice Requirements and separately violated the TCPA and FCC regulations.  As a further result of these violations, Defendant is precluded from asserting either of the two defenses available under the TCPA: (i) "prior express invitation or permission" ("PEP") that may have been given by a recipient (§ 227(a)(5)); and (ii) a three-prong defense based on transmissions to a recipient with whom an advertiser may have had an "established business relationship" ("EBR"). §227(b)(1)(C)(i)-(iii).

16.     Defendant WLC and Does 1 through 500, inclusive, are each a sender of all facsimile advertisements because they were persons on whose behalf the advertisements were sent and, in the alternative, because their products and services were advertised or promoted in the facsimile advertisements.

17.     Bay Hardware is informed and believes, and upon such information and belief alleges, that Defendant and Does 1 through 1000 approved, authorized and/or participated in the

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1  formulation, preparation and sending of the fax advertisements; received and retained the benefits

2  of the fax advertisements in the form of revenue, name/brand recognition and promotion; and had

3  actual notice of the unlawful activity constituting the violations herein and failed to take steps to

4  prevent the same.

5

6                                    **Class Action Allegations**

7

8       18.      **Class Action.**  This action is properly maintainable as a class action because (a)

9  there is an ascertainable class; and (b) there is a well-defined community of interest in the

10  questions of fact and law involved.

11

12      19.      **Class Definition.**  The Plaintiff Class consists of all persons and entities that were

13  subscribers of facsimile telephone numbers to which material that discusses, describes, or

14  promotes WLC's property, goods or services, was sent via facsimile transmission within four

15  years preceding the commencement of this action, including, without limitation, the faxes attached

16  to this Complaint as Exhibits 1 through 10.[3]  Plaintiff reserves the right to amend the class

17  definition after completion of class certification discovery.

18

19      20.      **Class Size/Ascertainability.**  Plaintiff is informed and believes and upon such

20  information and belief alleges that the number of persons and entities of the Plaintiff Class is

21  numerous.  Plaintiff is further informed and believes and upon such information and belief alleges

22  that the identity of all class members is readily ascertainable from records and other documents

23  _____

24      [3]      Excluded from the Plaintiff Class are officers, directors, and employees of any
Defendant or any affiliated company; legal representatives, attorneys, heirs, successors or assigns

25  of any Defendant, Defendant's officers and directors, or of any affiliated company; parent and
subsidiary companies of Defendant; any entity in which any of the foregoing persons have or have

26  had a controlling interest; any members of the immediate families of the foregoing persons; any
federal, state and/or local governments, governmental agencies, including the Federal

27  Communications Commission; and attorneys of record in this action and their immediate family
members.

28

**Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations
[Class Action] and for Declaratory Relief; Exhibits; Demand for Jury Trial**

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1  maintained by Defendant WLC and/or third parties.

2

3      21.    **Community of Interest**.  There is a community of interest in the questions of law

4  and fact involved because these questions predominate in the case, Plaintiff's claims are typical of

5  claims held by the Plaintiff Class, and Plaintiff and its counsel can adequately represent the

6  Plaintiff Class, as more particularly alleged in paragraphs 22 and 23.

7

8      22.    **Typicality**.  The claim of Plaintiff Bay Hardware is typical of those held by the

9  Plaintiff Class because, among other things, it was sent the same type of faxed communications; it

10 has the same claims under the identical statute and FCC regulations; and it is entitled to the same

11 statutory damages and injunctive relief.

12

13     23.    **Adequacy of Representation**.  The Plaintiff Class will be well represented by

14 Plaintiff and its counsel.  Plaintiff appreciates the responsibility of a class representative and

15 understands the nature and significance of the claims made in this case.  Plaintiff can fairly and

16 adequately represent and protect the interests of the Plaintiff Class because there is no conflict

17 between its interests and the interests of other class members.  Plaintiff's counsel have the

18 necessary resources, experience and ability to prosecute this case on a class action basis.

19 Plaintiff's counsel have extensive experience representing consumers and other clients in complex

20 business disputes, have significant experience as class counsel in federal and state courts, and have

21 significant experience litigating TCPA class actions.

22

23     24.    **Impracticability of Joinder**.  Joinder of all Plaintiff Class members is

24 impracticable due to the class's size and due to the relatively small potential monetary recovery

25 for each class member, in comparison to the time and costs associated with litigation on an

26 individual basis.

27

28     25.    **Common Questions of Law and Fact Are Predominant.**  Numerous common

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

1    questions of law and fact may be jointly tried and would not require each member individually to

2    litigate numerous and substantial questions to determine his or her right to recover following the

3    class judgment.

4

5        A.    **Common Questions of Fact**.  This case presents numerous questions of

6    fact that are common to all class members' claims.  Plaintiff is informed and believes, and upon

7    information and belief alleges, that the case arises out of a common nucleus of fact and

8    standardized conduct by Defendant WLC because, among other things: (1) the same type of faxes;

9    (2) were transmitted by the same sender, in the same manner and from the same facsimile

10   telephone number; (3) in violation of the same statute(s) and FCC regulations in the same manner;

11   and (4) entitling class members to receive the same statutory damages and injunctive relief.

12

13       B.    **Common Questions of Law**.  The case presents numerous common

14   questions of law, including, but not limited to:

15

16           1.    whether the faxes that are the subject of this lawsuit are

17   advertisements within the ambit of the TCPA and the FCC regulations;

18

19           2.    whether Defendant sent unsolicited facsimile advertisements in

20   violation of 47 U.S.C. § 227(b)(1)(C);

21

22           3.    whether Defendant complied with the Opt-Out Notice Requirements

23   of the TCPA and the FCC's regulations, and the legal consequences of the failure to comply with

24   those requirements;

25

26           4.    what constitutes a willful or knowing violation of the TCPA within

27   the meaning of 47 U.S.C. § 227(b)(3);

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-9-

5.      whether Defendant committed willful and/or knowing violations of the TCPA and/or the FCC's regulations;

6.      whether damages should be increased on account of Defendant's willful and/or knowing violations and, if so, by what amount; and

7.      whether the injunctive relief sought in paragraphs 32 and 36 should issue.

26.    **Injunctive Relief Is Appropriate**.  Defendant WLC acted on grounds that apply generally to the Plaintiff Class, making injunctive relief appropriate with respect to the Plaintiff Class as a whole.

27.    **Manageability** of **Class Adjudication**.  A class action is likely to produce substantial benefits to the litigants and the courts because, among other things:

A.      Common questions of law and fact, including those identified in paragraph 25, predominate over questions, if any, affecting only individual members.

B.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.

C.      Proof of the claims of Plaintiff will also prove the claims of the Plaintiff Class without the need for separate or individualized proceedings, and the statutory damages provided for in the TCPA are the same for all members of the Plaintiff Class.

D.      On information and belief, Defendant WLC has acted pursuant to common

-10-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

policies and practices in the same or similar manner with respect to all members of the Plaintiff Class.

E.      Because Defendant WLC has acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole.

F.      Questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

G.      Absent class certification there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

H.      Most, if not all, members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action.  Because the statutory minimum damage is $500 and the law does not entitle a prevailing plaintiff to recover attorneys' fees, individual action to remedy Defendant's violations would be grossly uneconomical.  As a practical matter, the claims of the Plaintiff Class are not likely to be redressed absent class certification.

I.      Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the fees and costs of litigation among class members in relationship to the benefits received.

28.     **Notice**.  Plaintiff contemplates that notices be provided to all members of the Plaintiff Class that can be identified through reasonable effort.  The notice will concisely and

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-11-

clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the class is certified that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members.

**First Cause of Action**

**(Against all Defendants for Violations of 47 U.S.C. § 227 and FCC Regulations)**

29.    **Incorporation**.  Plaintiff and the Plaintiff Class reassert and restate the allegations set forth in paragraphs 1 through 28, above.

30.    **WLC's Violations of the Prohibition of Unsolicited Facsimile Advertising**. Within four years preceding the commencement of this action, including, without limitation, on or about April 27, 2015, May 22, 2015, June 2, 2015, August 4, 2015, August 2015 (date uncertain), December 7, 2015, January 18, 2016, November 29, 2016, December 5, 2016, and December 12, 2016, and continuing to the present, Defendants, including Defendant WLC, violated the TCPA and FCC regulations promulgated under the Act by using a telephone facsimile machine, computer, or other device to send facsimile advertisements to telephone facsimile machines of Bay Hardware and other members of the Plaintiff Class.

31.    **Private Right of Action**.  Under section (b)(3) of the TCPA, Bay Hardware has a private right of action to bring this action on behalf of itself and on behalf of the Plaintiff Class to redress Defendant's violations of the Act and the FCC regulations.

32.    **Injunctive Relief**.  Subsection (b)(3)(A) of the TCPA authorizes Plaintiff to bring an action to enjoin a violation of the Act and/or FCC regulations.  Plaintiff requests that preliminary and permanent injunctions issue to: (1) prohibit Defendant WLC, its employees,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

-12-

agents, representatives, contractors, affiliates and all persons and entities acting in concert with them, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending to any person or entity any further unsolicited fax advertisements or failing to comply with the Opt-Out Notice Requirements; (2) require Defendant to deliver to Plaintiff all records of facsimile advertisements that are the subject of this lawsuit, including all content sent via facsimile, fax lists used, and records of transmission; (3) require Defendant to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such training; (4) require Defendant to provide written notice to all persons and entities to whom they sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements or advertisements that do not comply with the Opt-Out Notice Requirements is in violation of the TCPA and FCC regulations and that they should not be led or encouraged in any way by Defendant's violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require Defendant to conspicuously place on the homepage of its website the warnings contained in subparagraph 4 of this paragraph.

33.    **Damages**.  Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by Defendant WLC of the TCPA and/or FCC regulations alleged in this cause of action.  In addition, Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant WLC committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the Act.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

**Second Cause of Action**

**(Against all Defendants for Violations of 47 U.S.C. § 227 and FCC Regulations)**

34. **Incorporation**.  Plaintiff and the Plaintiff Class reassert and restate the allegations set forth in paragraphs 1 through 33, above.

35. **Defendant's Violations of the Opt-Out Notice Requirements**.  Within four years preceding the commencement of this action, including, without limitation, on April 27, 2015, May 22, 2015, June 2, 2015, August 4, 2015, August 2015 (date uncertain), December 7, 2015, January 18, 2016, November 29, 2016, December 5, 2016, and December 12, 2016, and continuing to the present, Defendants, including Defendant WLC, violated the TCPA and FCC regulations promulgated under the act by using a telephone facsimile machine, computer, or other device to send facsimile advertisements to telephone facsimile machines of Bay Hardware and other members of the Plaintiff Class that failed to comply with the Opt-Out Notice Requirements.

36. **Injunctive Relief**.  Subsection (b)(3)(A) of the TCPA authorizes Plaintiff to bring an action to enjoin a violation of the Act and/or FCC regulations.  Plaintiff and the Plaintiff Class request that the Court enter preliminary and permanent injunctions that require Defendant WLC to place on the first page of all facsimile advertisements a notice that is clear, conspicuous and fully complies with the Opt-Out Notice Requirements.

37. **Damages**.  Subsection (b)(3)(B) of the TCPA provides for the recovery of damages in the minimum amount of $500 for each violation by Defendant WLC of the TCPA and/or FCC regulations alleged in this cause of action.  In addition, Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant WLC committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the Act.

**Prayer for Relief**

WHEREFORE, Plaintiff Bay Hardware and the Plaintiff Class pray for judgment against Defendant WLC as follows:

**On the First Cause of Action:**

1.      In accordance with 47 U.S.C. § 227(b)(3)(B), awarding statutory damages in the amount of $500 for each violation of the TCPA's prohibition against unsolicited facsimile advertisements in an amount not less than $5 million, and trebling of such statutory damages;

2.      Entering the preliminary and permanent injunctions requested in paragraph 32 of this Complaint;

**On the Second Cause of Action:**

3.      In accordance with 47 U.S.C. § 227(b)(3)(B), awarding statutory damages in the amount of $500 for each violation of the Opt-Out Notice Requirements in an amount not less than $5 million, and trebling of such statutory damages;

4.      Entering the preliminary and permanent injunctions requested in paragraph 36 of this Complaint;

**On All Causes of Action:**

5.      Certifying the Plaintiff Class defined in paragraph 19 of this Complaint;

6.      Appointing Plaintiff Bay Hardware representatives for the Plaintiff Class and awarding Plaintiff an incentive award for its efforts as class representative;

7.      Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations [Class Action] and for Declaratory Relief; Exhibits; Demand for Jury Trial

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

8.      Ordering payment of Plaintiff's costs of litigation, including, without limitation, costs of suit and attorneys' fees, spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

9.      Ordering Defendant to provide notice to members of the Plaintiff Class proposed in paragraph 19, at its own expense, of the pendency of this action and all other notices ordered by the Court;

10.     Awarding prejudgment interest; and

11.     Awarding such other and further relief as the Court shall deem just and proper.

DATED: March 7, 2017                    PAYNE & FEARS LLP


By:     _____/s/ C. Darryl Cordero_____
                C. Darryl Cordero

        Attorneys for Craftwood II, Inc., a California corporation, dba Bay Hardware, individually and as representative of all others similarly situated

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and FCC Regulations [Class Action] and for Declaratory Relief; Exhibits; Demand for Jury Trial

**Jury Demand**

Plaintiff Bay Hardware demands trial by jury on all issues triable by jury.

DATED: March 7, 2017

PAYNE & FEARS LLP

By: _____ /s/ C. Darryl Cordero _____
C. Darryl Cordero

Attorneys for Craftwood II, Inc., a California corporation, dba Bay Hardware, individually and as representative of all others similarly situated

PAYNE & FEARS LLP
ATTORNEYS AT LAW
1100 GLENDON AVENUE, SUITE 1250
LOS ANGELES, CALIFORNIA 90024
(310) 689-1750

# Exhibit 1

04-27-2015 10:46          7149900764          26133          □ 1/1

# BIG SAVINGS!



### Wurth Louis and Company

---

# INTRODUCING THE NEW LAMINATE FINDER AT WURTHLAC.COM

### JUST CLICK THE BIG [Laminate Finder] BUTTON AT THE TOP OF WURTHLAC.COM





## NEW LAMINATE FINDER

Instantly view real-time laminate inventory levels at your local branch.

View your specific pricing and place orders directly from the laminate finder.

Quickly narrow down laminates based on colors, finishes and grades.

Try our new color picker; choose a color that best suits your project and see all laminates within that color family.



## 10% OFF DOELLKEN EDGEBANDING & FORMICA ADHESIVES

Buy 3 sheets or more of Formica Laminate using our new Laminate Finder and get 10% off all Doellken Edgebanding and Formica Adhesives on that order*

### USE THE PROMO CODE LAMINDER AT CHECKOUT

---

Wurth Louis and Company                          www.wurthlac.com

---

*To be removed from our fax list, please call 800-422-4389 ext. 8203 or fax this document back to 714-990-0764 (please include your fax number. If you prefer to receive updates via email, please also provide your email address _____

# Exhibit 2

05-22-2015 10:07                7149900764                26133                        1/1



# ONLINE ONLY!

**Wurth Louis and Company**



## WE WILL BE CLOSED MONDAY MAY 25, 2015. ANY ORDERS PLACED FRIDAY MAY 22ND THROUGH MONDAY MAY 25TH WILL BE SHIPPED TUESDAY MAY 26TH.**

*Only applies to orders placed on wurthlac.com when the promotional code "5OFFBLUM" is used at checkout. Discount only applies to Blum products. Promotional code is valid for one order only 5/22/15 through 5/27/15.

**Will call open Friday, May 22nd

Wurth Louis and Company                                              www.wurthlac.com

---

*To be removed from our fax list, please call 800-422-4389 ext. 8203 or fax this document back to 714-990-0764 (please include your fax number below). If you prefer to receive updates via email, please also provide your email address:* _____

# Exhibit 3

06-02-2015 11:22          7149900764          BAY HARDWARE          1/2

# BIG SAVINGS!



# WÜRTH

### Wurth Louis and Company

## SAVE 5% ON ALL PRO SERIES CA COMPLIANT ADHESIVES*

**CALIFORNIA LOCATIONS ONLY**



# PRO SERIES
# CA COMPLIANT
# ADHESIVES

Ideal for bonding decorative laminates to plywood, particle-board, metal, wood and other core materials. Fast drying and high strength characteristics make it superior for professional and industrial use.

- Available in Brush/Roll Grade and Spray Grade
- Economy and Premium options
- Post-Formable and Long open times
- Wide variety of sizes available

*Discount applies to Pro Series Adhesives only. Promotion valid at all California Wurth Louis and Company locations. Pricing reflects 5% discount to regular pricing. Promotional pricing valid 6/2/15 through 6/30/15.

## SAVE AN ADDITIONAL 5% ON PRO ADHESIVES
## WHEN YOU PLACE YOUR ORDER ON WURTHLAC.COM

### USE THE PROMO CODE  GOPRO  AT CHECKOUT TO SAVE 5%

Online pricing will reflect promotional 5% discount to regular pricing prior to entering the promo code, promo code will apply an additional 5% discount. Only applies to one order placed on wurthlac.com when the promotional code "GOPRO" is used at checkout. Discount only applies to Pro Series Adhesives. Promotional code is valid 6/2/15 through 6/30/15.

Wurth Louis and Company                                    www.wurthlac.com

To be removed from our fax list, please call 800-422-4389 ext. 6203 or fax this document back to 714-990-0764 (please include your fax number below).
If you prefer to receive updates via email, please also provide your email address: ...........................................

06-02-2015 11:22          7149900764          BAY HARDWARE          D 2/2

# FORMICA/PRO™ ADHESIVES
# CROSS REFERENCE



**WURTH**

Wurth Louis and Company

## CALIFORNIA LOCATIONS ONLY

### High Temperature Resistant Canisters

| Formica Item # | PRO Item # | Description | Flyer Pricing |
|---|---|---|---|
| FG270-27C | PRO-CAL-27 | 27 LB CANISTER, CAL COMPLIANT, LOW VOC, FLAMMABLE FINE WEB SPRAY, CLEAR | $231.43 |
| FG270-130C | PRO-CAL-130 | 130 LB CANISTER, CAL COMPLIANT, LOW VOC, FLAMMABLE FINE WEB SPRAY, CLEAR | $983.56 |
| FG270-260C | PRO-CAL-260 | 260 LB CANISTER, CAL COMPLIANT, LOW VOC, FLAMMABLE FINE WEB SPRAY, CLEAR | $1,840.39 |
| FG270-27R | PRO-CALR-27 | 27 LB CANISTER, CAL COMPLIANT, LOW VOC, FLAMMABLE FINE WEB SPRAY, RED | $231.43 |
| FG270-130R | PRO-CALR-130 | 130 LB CANISTER, CAL COMPLIANT, LOW VOC, FLAMMABLE FINE WEB SPRAY, RED | $983.56 |
| FG270-260R | PRO-CALR-260 | 260 LB CANISTER, CAL COMPLIANT, LOW VOC, FLAMMABLE FINE WEB SPRAY, RED | $1,840.39 |

### Wood Glue, Cold/Hot Press, Nip A Stack Adhesives

| Formica Item # | PRO Item # | DESCRIPTION | Flyer Pricing |
|---|---|---|---|
| FGP714Y-1G | PRO-BOND-01 | 1 GALLON TYPE 1 PROFESSIONAL GRADE YELLOW WOOD GLUE | $16.26 |
| FGP714Y-5G | PRO-BOND-05 | 5 GALLON TYPE 1 PROFESSIONAL GRADE YELLOW WOOD GLUE | $71.19 |
| FGXA2500-05 | PRO-COLD-PRESS-05 | 5 GALLON HOT/COLD PRESS LAMINATING ADHESIVE, WHITE | $71.89 |

### Non Flammable & Greenline Spray Grade Contact Adhesives

| Formica Item # | PRO Item # | DESCRIPTION | Flyer Pricing |
|---|---|---|---|
| FG270-05C | PRO-CAL-05 | 5 GALLON HIGH SOLIDS, ZERO VOC, CAL COMPLIANT, FLAMMABLE SPRAY GRADE, CLEAR | $162.59 |
| FG270-54C | PRO-CAL-54 | 54 GALLON HIGH SOLIDS, ZERO VOC, CAL COMPLIANT, FLAMMABLE SPRAY GRADE, CLEAR | $1,501.95 |
| FG270AC-135C | PRO-CAL-AC-252 | 252 LB HIGH SOLIDS, ZERO VOC, CAL COMPLIANT, FLAMMABLE SPRAY GRADE, CLEAR | $1,843.24 |
| FG270-05R | PRO-CALR-05 | 5 GALLON HIGH SOLIDS, ZERO VOC, CAL COMPLIANT, FLAMMABLE SPRAY GRADE, RED | $162.59 |
| FG270-54R | PRO-CALR-54 | 54 GALLON HIGH SOLIDS, ZERO VOC, CAL COMPLIANT, FLAMMABLE SPRAY GRADE, RED | $1,501.95 |
| FG270AC-135R | PRO-CALR-AC-126 | 126 LB HIGH SOLIDS, ZERO VOC, CAL COMPLIANT, FLAMMABLE SPRAY GRADE, RED | $989.39 |

### Canister Accessories

| Formica Item # | PRO Item # | DESCRIPTION | Flyer Pricing |
|---|---|---|---|
| FGLJCB102 | PRO-HOSE-12FT | PRO 12' CANISTER HOSE | $58.50 |
| FGLJCB103 | PRO-HOSE-18FT | PRO 18' CANISTER HOSE | $83.27 |
| FGLJCB104 | PRO-HOSE-26FT | PRO 26' CANISTER HOSE | $133.80 |
| FG270-TP | PRO-CAL-TP | CA/OTC COMPLIANT 22# CAN ADH TRIAL | $326.39 |

*Discount only applies to Pro Series Adhesives. Promotion valid at San Antonio, Austin, Oklahoma City and Benton Wurth Louis and Company locations only. When placing orders online, 5% discount will already be applied to the pricing displayed on wurthlac.com. Promotional pricing valid 8/2/16 through 8/30/16.

Wurth Louis and Company                                    www.wurthlac.com

*To be removed from our fax list, please call 800-422-4389 ext. 8203 or fax this document back to 714-990-0764 (please include your fax number below). If you prefer to receive updates via email, please also provide your email address: _____*

Exhibit 4

06-04-2015 10:24          7149900764               L010                    ☐ 1/1



WÜRTH

Wurth Louis and Company

# PLAY & NETWORK
## WURTH LOUIS AND COMPANY
## 5TH ANNUAL GOLF TOURNAMENT

PRESENTED BY PLATINUM SPONSOR



# FRIDAY, AUGUST 21, 2015
# CALIFORNIA COUNTRY CLUB
### WHITTIER, CALIFORNIA

### SHOTGUN START AT 7:30 AM
### AWARDS LUNCHEON AND RAFFLE AT 12:30 PM

## $45 PER PERSON

### ASK YOUR LOCAL WURTH LOUIS AND COMPANY SALES REP OR EMAIL
### TMINEHART@WURTHLAC.COM FOR TICKET INFORMATION

### HOLE-IN-ONE PRIZE(S)
# $19,750

### APPLE IPAD
### CALLAWAY GOLF CLUBS
### $500 GIFT CARD

www.Wurthlac.com

To be removed from our fax list, please call 800-841-4362 ext. 42650 or fax this document back to 714-990-0764 (please include your fax number below).
If you prefer to receive updates via email, please also provide your email address: _____

# Exhibit 5





Wurth Louis and Company

## TITEBOND MELAMINE GLUE ON SALE UNTIL AUGUST 31, 2015



# TITEBOND MELAMINE GLUE

- Significantly stronger than the leading competitor, at room & elevated temperatures
- Superior heat resistance
- Excellent initial tack... good flow properties & solid surface coverage
- Consistent quality/performance each use
- Low odor & dries clear
- Water cleanup & nonflammable

| PRODUCT | SIZE | CS OTY | PRICE/GAL |
|---|---|---|---|
| FR401-4 | 16 OZ. | 12 | $3.14 / each |
| FR401-6 | 1 GAL | 2 | $14.71 / each |
| FR401-7 | 5 GAL | 1 | $69.27 / each |

*Discounted pricing valid until August 31, 2015.
On-line prices already reflect discounted price, no promo code nessisary.





Wurth Louis and Company                                           www.wurthlac.com

*To be removed from our fax list, please call 800-422-4389 ext. 8203 or fax this document back to 714-990-0764 (please include your fax number. If you prefer to receive updates via email, please also provide your email address* _____

# Exhibit 6

12-07-2015 12:10       7149900764       26133       D 1/2

# LIGHTING SALE
## GREAT TIME TO SAVE UP TO 70% OFF
## REGULAR PRICING (1 OF 2)



Wurth Louis and Company



| PART # | DESCRIPTION | PRICE |
|---|---|---|
| PROLED-22GCIR | PRO Standard 20 Gauge Electrical Wire, 25 Feet | $3.90 |
| PROLED-BLOCK4ML | PRO LED Light Terminal Block with 4 ML Expansion Posts and 8 Inch Cable | $2.19 |
| PROLEDIW100RGS | PRO Link Connector for RGB Lighting, 39 Inch* | $4.29 |
| PROLED-PWREXTRGB | PRO Power Lead Extension Cable for RGB Lighting, 39 Inch | $3.59 |
| PROLED-PWRRGB | PRO Power Lead for RGB Lighting, 6 Inch | $2.99 |
| PROLED-PWRYSPMT | PRO Y Splitter for RGB Lighting, 39 Inch | $3.59 |
| PROLED-RGBREMOTE | PRO Controller for RGB Lighting | $19.99 |
| PROLED-TCHDIM | PRO Touch Dimmer On/Off Switch for PROTAPE LED Lighting | $11.99 |
| PROLED-150DTPCW | PRO LED Flexible Strip Light, 150 Diode, 9W, 16 Foot Roll, Cool White* | $59.99 |
| PROLED18SQPKCW | PRO Square HD LED Puck Light, 18 Diode, 1.25W, Aluminum Finish, Cool White* | $10.97 |
| PROLED300DSPCW | PRO LED Splash-Proof Strip Light, 300 Diode, 18W, 16 Foot Roll, Cool White* | $99.99 |
| PROLED300DTPCW | PRO LED Flexible Strip Light, 300 Diode, 9W, 16 Foot Roll, Cool White* | $86.49 |
| PROLED46DTSKCW | PRO LED Under Cabinet Task Light, 46 Diode, 2.7W, Cool White* | $24.99 |
| PROLED60DGXCW | PRO GX53 LED Puck Light, 60 Diode, 3.5W, Cool White* | $15.59 |
| PROLED65DTSKCW | PRO LED Under Cabinet Task Light, 65 Diode, 4.5W, Cool White* | $29.49 |
| PROLEDACON-2ENDCP | PRO Aluminum Profile End Caps, Sold per Pair, Continuum* | $0.95 |
| PROLEDANGL39 | PRO Aluminum Profile, Angled, 39 Inch* | $8.29 |
| PROLEDARM-2MNTBKT | PRO Aluminum Profile Mounting Brackets, Sold per Pair, Recessed* | $0.95 |
| PROLEDARM-39 | PRO Aluminum Profile, Recessed, 39 Inch* | $9.49 |
| PROLEDASF-39 | PRO Aluminum Profile, Surface, 39 Inch* | $9.49 |
| PROLEDASQ-39DIF | PRO Aluminum Profile, Continuum w/Diffuser, 39 Inch* | $10.49 |
| PROLEDDVR-12V10W3P | PRO LED Lighting 12 Volt, 10 Watt Driver with 3 MIN Ports* | $16.49 |
| PROLEDDVR-12V72RGB | PRO LED Lighting 12 Volt, 72 Watt Driver with 1 BRKL Connector for RGB Lights | $59.99 |
| PROLEDDVR-24V7512P | PRO LED Lighting 24 Volt, 75 Watt Driver with 12 ML Ports | $79.99 |
| PROLEDGX-SCRBOCK | PRO GX53 Screw-In Light Socket Adaptor | $3.20 |
| PROLEDGX-SOCKEXT | PRO GX53 Lamp Base Extension | $2.49 |
| PROLEDHFS-LW11 | PRO Link Connector for High Output Flex Strips, 11.81 Inch* | $1.90 |
| PROLEDHFS-PWRP8 | PRO Power Cord for High Output Flex Strips, 98 Inch | $3.59 |
| PROLEDHO12DFSCW | PRO High Output Flex Strip, 12.99 Inch, Cool White* | $21.49 |
| PRGLEDSPE2ECON | PRO Splash-Proof End Connector for PROTAPE LED Lighting | $1.59 |
| PROLEDSPLW12 | PRO Splash-Proof Link Wire for PROTAPE LED Lighting, 12 Inch* | $1.90 |
| PROJLEDSPPWR98 | PRO Splash-Proof Power Cord for PROTAPE LED Lighting, 98 Inch | $3.59 |
| PROLEDTPCIC2PK | PRO Interlink Connectors for PROTAPE LED Lighting | $1.59 |
| PROLEDTPE2ECON | PRO End-to-End Connector for PROTAPE LED Lighting | $1.90 |
| PROLEDTPLW12 | PRO Link Wire for PROTAPE LED Lighting, 12 Inch* | $1.59 |
| PROLEDTPPWRP8 | PRO Power Cord with MIN Connector for PROTAPE LED Drivers, 98 Inch | $3.59 |
| PROLEDTPPWRP8AMP | PRO Power Cord with AMP Connector for PROTAPE LED Dimmable Drivers, 98 Inch | $3.59 |
| PROPCWERPOD-AU | PRO Powerpod with 3 Power Outlets & 2 USB Outlets, Aluminum* | $79.99 |
| WRLEDIRSWITCH | Wurth LED Motion Sensor Switch | $16.99 |
| WRLED12D4ASCW | Wurth LED Strip Light Kit w/Non-Dimmable Driver, 12 Diode, Cool White* | $69.99 |
| WRLED12D4ASDIMCW | Wurth LED Strip Light Kit w/Dimmable Driver, 12 Diode, Cool White* | $119.99 |
| WRLED12D4FSCW | Wurth 12 Diode LED Flexible Strip Lights (Set of 4), Cool White* | $79.99 |
| WRLED12D4FSDIMCW | Wurth 12 Diode LED Flexible Strip Lights with Dimmer (Set of 4), Cool White* | $119.99 |
| WRLED12D4DSCW | Wurth LED Strip Light, 12 Diode, 0.8W, 11.81 Inches Long, Cool White* | $10.49 |
| WRLED12DFSCW | Wurth 12 Diode LED Flexible Strip Light, Cool White* | $12.99 |
| WRLED21D3PKCW | Wurth 21 Diode LED Economy Puck Lights (Set of 3), Cool White* | $86.49 |
| WRLED21D3PKDIMCW | Wurth 21 Diode LED Economy Puck Lights with Dimmer (Set of 3), Cool White* | $119.99 |
| WRLED21DPKCW | Wurth 21 Diode LED Economy Puck Light, Cool White* | $21.49 |
| WRLED21EXTS9 | Wurth Extension Guide for Puck Lights, 39 Inch | $1.90 |
| WRLED24D3SDPKCW | Wurth Slide-On HD LED Puck Lights (Set of 3), Cool White* | $143.99 |
| WRLED24D3SDPKDIMCW | Wurth Slide-On HD LED Puck Light with Dimmer (Set of 3), Cool White* | $154.99 |
| WRLED24D4ASCW | Wurth 24 Diode LED Accent Strip Lights (Set of 4), Cool White* | $86.59 |
| WRLED24D4AS0IMCW | Wurth 24 Diode LED Accent Strip Lights with Dimmer (Set of 4), Cool White* | $143.99 |
| WRLED24DASCW | Wurth 24 Diode LED Accent Strip Lights, Cool White* | $15.49 |

Exhibit 7

01-18-2016 10:03          7149900764          26133          🗋 1/2





Wurth Louis and Company

# SAVE UP TO 70% OFF
# REGULAR PRICED LIGHTING!
## ASK YOUR WURTH LOUIS AND COMPANY SALES REP FOR MORE DETAILS!

PAGE 1 OF 2

| PART # | DESCRIPTION | PRICE |
|---|---|---|
| PROLED-22GCPR | PRO Standard 20 Gauge Electrical Wire, 25 Feet | $3.90 |
| PROLED-BLOCK4MI | PRO LED Light Terminal Block with 4 MI Expansion Ports and 8 Inch Cable | $2.19 |
| PROLED-LW100RGB | PRO Link Connector for RGB Lighting, 39 Inch* | $4.29 |
| PROLED-PWREXTRGB | PRO Power Lead Extension Cable for RGB Lighting, 39 Inch | $3.59 |
| PROLED-PWRRGB | PRO Power Lead for RGB Lighting, 6 Inch | $2.99 |
| PROLED-PWRSPLIT | PRO Y-Splitter for RGB Lighting, 39 Inch* | $3.59 |
| PROLED-RGBREMOTE | PRO Controller for RGB Lighting | $19.99 |
| PROLED-TCHDIM | PRO Touch Dimmer On/Off Switch for PROTAPE LED Lighting | $11.99 |
| PROLED15DDTPCW | PRO LED Flexible Strip Light, 150 Diode, 9W, 16 Foot Roll, Cool White* | $59.99 |
| PROLED18SGPK-CW | PRO Square HD-LED Puck Light, 18 Diode, 1.20W, Aluminum Finish, Cool White* | $10.97 |
| PROLED300DSP-CW | PRO LED Splash-Proof Strip Light, 300 Diode, 18W, 16 Foot Roll, Cool White* | $99.99 |
| PROLED300DTP-CW | PRO LED Flexible Strip Light, 300 Diode, 9W, 16 Foot Roll, Cool White* | $86.49 |
| PROLED46DTSK-CW | PRO LED Under Cabinet Task Light, 46 Diode, 2.7W, Cool White* | $24.99 |
| PROLED60DGK-CW | PRO GX53 LED Puck Light, 60 Diode, 3.5W, Cool White* | $15.59 |
| PROLED65DTSK-CW | PRO LED Under Cabinet Task Light, 65 Diode, 4.5W, Cool White* | $29.49 |
| PROLEDACON-2ENDCP | PRO Aluminum Profile End Caps, Sold per Pair, Continuum* | $0.95 |
| PROLEDANGL-39 | PRO Aluminum Profile, Angled, 39 Inch* | $8.29 |
| PROLEDARM-2MNTRKT | PRO Aluminum Profile Mounting Brackets, Sold per Pair, Recessed* | $0.95 |
| PROLEDARM-39 | PRO Aluminum Profile, Recessed, 39 Inch* | $7.49 |
| PROLEDASF-39 | PRO Aluminum Profile, Surface, 39 Inch* | $9.49 |
| PROLEDASG-39DIF | PRO Aluminum Profile, Continuum w/Diffuser, 39 Inch* | $10.49 |
| PROLEDDVR-12V10W3P | PRO LED Lighting 12 Volt, 10 Watt Driver with 3 MIN Ports* | $16.49 |
| PROLEDDVR-12V72RGB | PRO LED Lighting 12 Volt, 72 Watt Driver with 1 BRRL Connector for RGB Lights | $59.99 |
| PROLEDDVR-24V75120 | PRO LED Lighting 24 Volt, 75 Watt Driver with 12 MI Ports | $79.99 |
| PROLEDGX-SCRSOCK | PRO GX53 Screw-In Light Socket Adaptor | $3.20 |
| PROLEDGX-SOCKEXT | PRO GX53 Lamp Base Extension | $2.49 |
| PROLEDHFS4W11 | PRO Link Connector for High Output Flex Strips, 11.81 Inch* | $1.90 |
| PROLEDHFG-PWR9B | PRO Power Cord for High Output Flex Strips, 98 Inch | $3.59 |
| PROLEDHO120FS-CW | PRO High Output Flex Strip, 12.99 Inch, Cool White* | $21.49 |
| PROLEDSP-E2ECON | PRO Splash-Proof End Connector for PROTAPE LED Lighting | $1.59 |
| PROLEDSP-LW12 | PRO Splash-Proof Link Wire for PROTAPE LED Lighting, 12 Inch* | $1.90 |
| PROLEDSP-PWR9B | PRO Splash-Proof Power Cord for PROTAPE LED Lighting, 98 Inch | $3.59 |
| PROLEDTP-CTC2PK | PRO Interlink Connectors for PROTAPE LED Lighting | $1.59 |
| PROLEDTP-P2ECON | PRO End-to-End Connector for PROTAPE LED Lighting | $1.90 |
| PROLEDTP-LW12 | PRO Link Wire for PROTAPE LED Lighting, 12 Inch* | $1.59 |
| PROLEDTP-PWR9B | PRO Power Cord with MIN Connector for PROTAPE LED Lighting, 98 Inch | $3.59 |
| **PROLEDTP-PWR9AMP** | **PRO POWER CORD WITH AMP CONNECTORS FOR PROTAPE LED DIMMABLE DRIVERS, 98 INCH** | **$2.69 - LIMITED QTY AVAILABLE** |
| PROPOWERROD-AL | PRO Powerpod with 3 Power Outlets & 2 USB Outlets, Aluminum* | $79.99 |
| WRLED-IRSWITCH | Wurth LED Motion Sensor Switch | $16.99 |
| WRLED12D4AS-CW | Wurth LED Strip Light Kit w/Non-Dimmable Driver, 12 Diode, Cool White* | $89.99 |
| WRLED12D4ASDIM-CW | Wurth LED Strip Light Kit w/Dimmable Driver, 12 Diode, Cool White* | $119.99 |
| WRLED12D4FS-CW | Wurth 12 Diode LED Flexible Strip Lights (Set of 4), Cool White* | $79.99 |

01-18-2016 10:03          7149900764              26133                D 2/2

| PART # | DESCRIPTION | PRICE |
|---|---|---|
| WRLED12D4FSDIM-CW | Wurth 12 Diode LED Flexible Strip Lights with Dimmer (Set of 4), Cool White* | $119.99 |
| WRLED12DAB-CW | Wurth LED Strip Light, 12 Diode, 0.8W,11.81 Inches Long, Cool White* | $10.49 |
| WRLED12DFS-CW | Wurth 12 Diode LED Flexible Strip Lights, Cool White* | $12.99 |
| WRLED21D3PK-CW | Wurth 21 Diode LED Economy Puck Lights (Set of 3), Cool White* | $86.49 |
| WRLED21D3PKDIM-CW | Wurth 21 Diode LED Economy Puck Lights with Dimmer (Set of 3), Cool White* | $119.99 |
| WRLED21DPK-CW | Wurth 21 Diode LED Economy Puck Light, Cool White* | $21.49 |
| WRLED21EXT59 | Wurth Extension Cable for Puck Lights, 59 Inch | $1.90 |
| WRLED24D3SOF-CW | Wurth Slide-On HD LED Puck Lights (Set of 3), Cool White* | $145.99 |
| WRLED24D3SOPDIM-CW | Wurth Slide-On HD LED Puck Light with Dimmer (Set of 3), Cool White* | $154.99 |
| WRLED24D4AS-CW | Wurth 24 Diode LED Accent Strip Lights (Set of 4), Cool White* | $86.59 |
| WRLED24D4ASDIM-CW | Wurth 24 Diode LED Accent Strip Lights with Dimmer (Set of 4), Cool White* | $143.99 |
| WRLED24DAS-CW | Wurth 24 Diode LED Accent Strip Lights, Cool White* | $15.49 |
| WRLED24DSOP-CW | Wurth Slide-On HD LED Puck Light, Cool White* | $12.29 |
| WRLED72DFS-CW | Wurth 72 Diode LED Flexible Strip Lights, Cool White* | $99.99 |
| WRLEDASCC11 | Wurth Linkable Wire, 11.81 Inch | $1.20 |
| WRLEDASCSW1 | Wurth Corner Strip Wire, 1.18 Inch | $1.65 |
| WRLEDASDCL98 | Wurth Strip Driver Connection Lead, 98 Inch | $2.57 |
| WRLEDAS-EC | Wurth End Cap for LED Strip | $0.21 |
| WRLEDDVR-12V12W12 | WURTH LED LIGHTING DIMMABLE 12 VOLT, 15 WATT DRIVER WITH 12 ML PORTS | $69.99 - LIMITED QTY AVAILABLE |
| WRLEDDVR-12V15W12P | Wurth LED Lighting 12 Volt, 15 Watt Driver with 12 ML Ports* | $25.99 |
| WRLEDDVR-12V30W | Wurth LED Lighting 12 Volt, 30 Watt Driver with 12 ML Ports* | $47.49 |
| WRLEDDVR-24V15W12 | Wurth LED Lighting Dimmable 24 Volt, 15 Watt Driver with 12 ML Ports* | $69.99 |
| WRLEDDVR-24V30W | Wurth LED Lighting 24 Volt, 30 Watt Driver with 12 ML Ports* | $47.49 |
| WRLEDFS-CC1 | Wurth Linkable Wire Corner Connection Cable, 1.97 Inch | $1.20 |
| WRLEDFS-DCL98 | Wurth Driver Connection Lead, 98 Inch | $2.97 |
| WRLEDFS-ICL19 | Wurth Interconnecting Lead, 19.69 Inch* | $1.39 |
| WRLEDFS-TS-CW | Wurth T-Shaped LED Flexible Strip, 2.76 Inch, Cool White* | $5.79 |
| WRLED24D3PK-CW | WURTH 24 DIODE HD-LED RECESSED/SURFACE LIGHTS (SET OF 3), COOL WHITE* | $109.99 - LIMITED QTY AVAILABLE |
| WRLED24D3PKDIM-CW | Wurth 24 Diode HD-LED Recessed/Surface Light with Dimmer (Set of 3), Cool White* | $143.99 |
| WRLEDHD4DPK-CW | WURTH 24 DIODE HD-LED RECESSED/SURFACE LIGHT, COOL WHITE* | $21.89 - LIMITED QTY AVAILABLE |
| WRLEDHD-MLC98 | Wurth ML Power Extension Cable, 98.43 Inch | $4.29 |
| RVRVS-8W-343CWH | Trescent T5 13 Flourescent Light, Cool White, White Housing, 13.5 Inch* | $11.99 |
| RVTRS5-21W-904CWH | Trescent T5 13 Flourescent Light, Cool White, White Housing, 35 Inch* | $15.29 |
| RVRV4-16W-524CWH | Trescent T4 Flourescent Light, Cool White, White Housing, 20W, 20.5 Inch* | $15.29 |
| PVLED-51KB-CN1 | LED Flatline, Cool White, Nickel, 8 Inch* | $20.29 |
| PVLED-AGLPR71 1CAL | 88 V Angle High Output LED, 4800K Cool, 29 Inch* | $73.99 |
| PVLED-LSP1016CN1 | ite Link Series LED Lights, Nickel, Cool White, 10 Inch* | $93.99 |
| PVLED-AGLPR1016CAL | 88 V Angle High Output LED, 4800K Cool, 41 Inch* | $99.99 |

**PAGE 2 OF 2**

*Additional colors, sizes, or options may be available with different pricing. Product availability may vary by location. Limited to stock on hand. While supplies last.
As this is remaining clearance inventory – which varies by branch based on sales in each location – the items listed in this flyer may not be available at your local
Wurth Louis and Company branch. Standard freight charges apply. Ask your local sales representative for more information.

Wurth Louis and Company                                              www.wurthlac.com

# Exhibit 8

11-29-2016 10:40                    7149900764                    BAY HARDWARE                    1/1

# BUY MORE
# SAVE MORE
## PICK YOUR DISCOUNT



**WÜRTH**

Wurth Louis and Company

www.wurthlac.com



Reference the promo code for the selected discount value when placing your order in store or when calling your customer service representative. Hurry, this offer is for a **limited time!**

# $350 order receives = 3% discount
# $500 order receives = 5% discount
# $750 order receives = 7% discount
# $1,500 order receives = 10% discount

REFERENCE WLAC350 FOR $350 = 3% OFF
REFERENCE WLAC500 FOR $500 = 5% OFF
REFERENCE WLAC750 FOR $750 = 7% OFF
REFERENCE WLAC1500 FOR $1,500 = 10% OFF

## LIMITED TIME OFFER!*

**VALID 11/28/16 TO 12/2/2016**

Discounts exclude machinery, Festool, surfacing products, laid up panels and current contract pricing

*Discount is valid starting 11/28/2016 to 12/2/2016. This promotion can not be redeemed online. Customers that return products for a refund, the value charged will be deducted from their balance. Promotional discounts exclude machinery, Festool, surfacing products, laid up panels and current contract pricing. Offer can not be combined with any other offers or discounts. Please contact your local sales representative for additional information or questions.

To be removed from our fax list, please call (800) 841-4362 ext 42850 or fax this document back to (714) 990-0764 (please include your fax number). If you prefer to receive updates via email, please provide your email address: _____

# Exhibit 9

12-05-2016 10:05          7149900764          BAY HARDWARE                    1/1

# JUST IN TIME
# FOR THE HOLIDAYS



**WÜRTH**

Wurth Louis and Company

# 4% OFF
# ONE ONLINE PURCHASE*

## USE PROMO CODE
# CALDE16
## DURING CHECKOUT AT WURTHLAC.COM

### HURRY! OFFER ENDS 12/11/16

*Get 4% off one web order when you use the promo code "CALDE16" during checkout at WurthLAC.com. Excludes Machinery, Festool, Laid Up Panels, and Surfacing products. Valid online only 12/5/2016 through 12/11/2016. Limit one use of discount per customer. Cannot be combined with any other offer.

Wurth Louis and Company                                        www.wurthlac.com

To be removed from our fax list, please call 800-841-4362 ext. 42850 or fax this document back to 714-990-0764 (please include your fax number). If you prefer to receive updates via email, please also provide your email address: _____

# Exhibit 10

# LIMITED TIME
## Canister Contact Adhesive


**WÜRTH**
Wurth Louis and Company

**OFF LINE PROMOTION**

# BUY TWO+ CANISTER AND GET HOSE WITH SPRAY GUN FREE*

### BUY 2 AND GET A 12' HOSE OR BUY 3 CANISTERS AND GET 12' HOSE AND SPRAY GUN FREE WITH PURCHASE*




AND/OR


| PART # | DESCRIPTION |
|---|---|
| **CANISTER ADHESIVE • BUY TWO OR THREE FROM CANISTERS LISTED FOR FREE GIFT WITH PURCHASE** | |
| FG200-03BC | FORMICA 3B# CLEAR PREMIUM CONTACT ADHESIVE |
| FG200-03BG | FORMICA 3B# GREEN PREMIUM CONTACT ADHESIVE |
| FG200-03BR | FORMICA 3B# RED PREMIUM CONTACT ADHESIVE |
| PRO-CANISTER-03B | PRO 3B# CLEAR PREMIUM CONTACT ADHESIVE |
| PRO-CANISTER-R-03B | PRO 3B# RED PREMIUM CONTACT ADHESIVE |
| PRO-CAL-27 | PRO 27# CLEAR VOC COMPLIANT PREMIUM CONTACT ADHESIVE |
| PRO-CALR-27 | PRO 27# RED VOC COMPLIANT PREMIUM CONTACT ADHESIVE |
| **HOSE AVAILABLE WITH PURCHASE OF TWO CANISTERS** | |
| FGLIC6106 | FORMICA / PRO ADJUSTABLE SPRAY GUN WITH TIP |
| FGLICo102 | FORMICA / PRO 12' SPRAY HOSE |

**ADHESIVE PROPERTIES:**
• High Heat Resistance          • Fast Dry
• High Bond Strength            • Low Odor
• Quick Grab

**SPRAY GUN & HOSE PROPERTIES:**
• Adjustable                    • Portable

**PRODUCTS ARE AVAILABLE IN THE FOLLOWING MARKETS:**
FG200 IS AVAILABLE IN: SEATTLE, SPOKANE, OREGON, BOISE, IDAHO FALLS, UTAH DC, SAINT GEORGE, COLORADO, NEW MEXICO, GRAND PRAIRIE, HOUSTON AND BATON ROUGE
PRO-CANISTER IS AVAILABLE IN: ARIZONA, LAS VEGAS, ARKANSAS, OKLAHOMA CITY, SAN ANTONIO AND AUSTIN
PRO-CAL IS AVAILABLE IN: SAN DIEGO, BREA, FREMONT, AND SACRAMENTO

## CONTACT YOUR SALES REP OR CALL CUSTOMER SERVICE BY FAX OR E-MAIL.
## PLEASE REFERENCE THIS PROMOTION ON ALL FAXES AND E-MAILS.

Promotional offer is valid from 12-12-16 through 12-16-16 for customers that purchases (2) of the 3B# or 27# canisters and receive a 12' hose at no charge or purchase (3) of 3B# or 27# canisters and receive a 12' hose and spray gun at no charge. Offer cannot be combined with any other promotion. Discount is not available online or for a limited time. Customer must make reference to the promotional offer when calling in or speaking with their sales representative. Spray gun and hose listed on flyer are suggested equipment options. Other spray gun and hose options are available but does not qualify for this promotion. Subject to change without notice and based on availability. Discount will be deducted from total if products are returned. No cash value on returned merchandise and will be deducted from total.

12/12/16-12/16/16

To be removed from our fax list, please call (800) 841-4362 ext. 42850 or fax this document back to (714) 990-0764 (please include your fax number). If you prefer to receive updates via email, please also provide your email address: _____

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| CRAFTWOOD II . INC . dba BAY HARDWARE | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 8:17-cv-00606 (DOC) (KES) |
| WURTH LOUIS AND COMPANY | ) |
| | ) |
| *Defendant* | ) |

### AMENDED
## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: The Custodian of Records for WestFax. Inc.
9200 E. Mineral Ave .. Suite 275, Centennial. CO 80112

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:SEE EXHIBIT "A" ATTACHED

| Place: First Records Retrieval. c/o Dispatch Leg~l Services<br>5910 South University Blvd., Unit C18-146<br>Greenwood Village, CO 80121-~883 (213) 580-9260 | Date and Time:<br><br>10/16/2017 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/02/2017

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Craftwood
, who issues or requests this subpoena, are:

Scott O. Luskin, 1100 Glendon Avenue, Suite 1250, Los Angeles, CA 90024, 310.689.1750 , sol@paynefears.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT**

B

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   8:17-cv-00606 (DOC) (KES)

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00    .

I declare under penalty of perjury that this information is true.

Date: _____     _____
                                                         *Server's signature*

                                                 _____
                                                         *Printed name and title*

                                                 _____
                                                         *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

As used herein, the following terms shall have the meanings indicated below:

1.      "WURTH" means Wurth Louis & Company, and its employees and representatives.

2.      The terms "YOU," "YOUR," or "WESTFAX" refers to WestFax, Inc., its subsidiaries, related or affiliated companies, and predecessors-in-interest that provided, during the relevant period set forth below, facsimile-related services to WURTH.

3.      The term "CASE" refers to the instant litigation, in the United States District Court, Central District of California, *Craftwood II, Inc., v. Wurth Louis and Company, et al.,* Case No. 8:17-cv-00606.

4.      The "FAX" or "FAXES" means any and all documents or materials sent, or attempted to be sent, via facsimile transmission, through WESTFAX or using WESTFAX's equipment or services, between January 1, 2013, and the present, for or on behalf of WURTH.

5.      "LIST" or "LISTS" means any spreadsheet, compilation, or other list or document that was used or generated in connection with the sending, or attempted sending, of the FAXES by WESTFAX or on behalf of WURTH.

6.      "TCPA" shall mean the Telephone Consumer Protection Act, 47 U.S.C. § 227(d), including the Junk Fax Prevention Act and all implementing regulations.

7.      "DOCUMENT" or "DOCUMENTS" shall mean all documents, electronically stored information, and tangible things, including without limitation all writings (as defined in Section 250 of the California Evidence Code) and all other means

of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate DOCUMENT within the meaning of this term. DOCUMENTS shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. DOCUMENTS expressly include all ELECTRONIC RECORDS.

8.    "ELECTRONIC RECORDS" shall mean the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed

by mechanical, facsimile, electronic, magnetic, digital, or other means. ELECTRONIC RECORDS includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ELECTRONIC RECORDS exists in an active file, deleted file, or file fragment. ELECTRONIC RECORDS includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. ELECTRONIC RECORDS also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

9.      "COMMUNICATION(S)" shall mean any oral, written or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

10.     "RELATING TO," "RELATED TO" or "RELATE(S) TO" shall mean constituting, containing, concerning, embodying, reflecting, identifying, stating,

mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

## DOCUMENTS REQUESTED

1.  All FAXES sent or that were attempted to be sent through WESTFAX.

2.  All FAXES stored in WESTFAX's records or files.

3.  All LISTS provided or uploaded by WURTH or WESTFAX to WESTFAX in connection with the sending, or attempted sending of, the FAXES.

4.  All User Guide(s) provided by WESTFAX to WURTH.

5.  All User Guide(s) generally provided by WESTFAX to its customers, pertaining to the use and procedures of WESTFAX's facsimile-related services between January 1, 2013, and the present.

6.  A copy of any and all of WESTFAX's policies or procedures to be followed by WURTH in connection with the use of WESTFAX's facsimile-related services with respect to the FAXES and/or with respect to facsimile-related services provided by WESTFAX to WURTH.

7.  All DOCUMENTS RELATED TO delivery reports in connection with the sending, or attempted sending of, the FAXES.

8.  All DOCUMENTS RELATED TO fax broadcast reports in connection with the sending, or attempted sending of, the FAXES.

9.  All DOCUMENTS RELATED TO fax work detail reports in connection with the sending, or attempted sending of, the FAXES.

10.    All DOCUMENTS RELATED TO exception reports in connection with the sending, or attempted sending of, the FAXES.

11.    All DOCUMENTS RELATED TO summary reports in connection with the sending, or attempted sending of, the FAXES.

12.    All DOCUMENTS that RELATE TO each telephone carrier or other third party service provider used by WESTFAX to provide facsimile-related services to WURTH.

13.    All DOCUMENTS that RELATE TO WESTFAX's telephone numbers used to provide facsimile-related services to WURTH.

14.    All DOCUMENTS that RELATE TO WESTFAX's account numbers for billing purposes with any telephone carrier or other third party service provider used by WESTFAX to provide facsimile-related services to WURTH.

15.    All COMMUNICATIONS between WESTFAX and WURTH, including but not limited to any COMMUNICATIONS RELATED TO any agreements or contracts between WESTFAX and WURTH in effect for facsimile-related services provided by WESTFAX to WURTH, including, but not limited to, communications that led to the entering into such agreements or contracts.

16.    All agreements or contracts between WESTFAX and WURTH in effect for facsimile-related services provided by WESTFAX to WURTH, including, but not limited to, services related to the FAXES.

17.     All DOCUMENTS RELATED TO WURTH's customer profile(s) and billing forms as contained in WESTFAX's records or files including, but not limited to, any changes or modifications thereto.

18.     All invoices related to the FAXES.

19.     All COMMUNICATIONS between WESTFAX and WURTH regarding WESTFAX's invoices and billing statements provided or issued by WESTFAX to WURTH in connection with the FAXES and/or facsimile-related services provided by WESTFAX to WURTH.

20.     Any DOCUMENTS that RELATE TO agreements, statements, acknowledgements and/or representations by WURTH or WESTFAX, with respect to faxing done through WESTFAX, that the FAXES would comply with applicable law or regulations, including, but not limited to, the Telephone Consumer Protection Act, the Junk Fax Prevention Act, regulations promulgated by the Federal Communications Commission under those laws, or any other law concerning facsimile advertising.

21.     All COMMUNICATIONS between WESTFAX and WURTH about any opt-out notices appearing on one or more FAXES, including the form or forms the opt-out language might take.

22.     All DOCUMENTS that RELATE TO any PERSONS or entities which opted out of receiving FAXES from WURTH including, but not limited to, all removal lists showing such opt-outs.

23.     All COMMUNICATIONS with any PERSONS or entities that RELATE TO opting out of receiving FAXES from WURTH.

**Samantha Foley**

| | |
|---|---|
| **From:** | Lem, Philip K. <pkl@paynefears.com> |
| **Sent:** | Thursday, November 30, 2017 11:59 AM |
| **To:** | Lem, Philip K. |
| **Subject:** | Ex. C |
| **Attachments:** | LT s. luskin 10.4.17 re westfax.pdf |

**Philip K. Lem**
Attorney

# PAYNE & FEARS

Payne & Fears LLP, 4 Park Plaza, Suite 1100, Irvine, CA 92614
Main 949.851.1100 • Direct 949.797.1201 • Fax 949.851.1212
www.paynefears.com • email: pkl@paynefears.com

**From:** Kayes, Tom [mailto:tkayes@sidley.com]
**Sent:** Wednesday, October 4, 2017 11:48 AM
**To:** Porter, Courtney K. <cporter@paynefears.com>
**Cc:** Luskin, Scott O. <SOL@paynefears.com>
**Subject:** RE: Wurth - AMENDED WestFax Subpoena

Scott:

A letter re: the amended WestFax subpoena.

Best,

**TOM KAYES**
Associate

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
+1 312 853 3293
tkayes@sidley.com
www.sidley.com

> **From:** Porter, Courtney K. [mailto:cporter@paynefears.com]
> **Sent:** Monday, October 02, 2017 2:06 PM
> **To:** Kayes, Tom <tkayes@sidley.com>
> **Cc:** Luskin, Scott O. <SOL@paynefears.com>
> **Subject:** Wurth - AMENDED WestFax Subpoena
>
> Mr. Kayes,
>
> Attached please find an amended copy of the reissued WestFax subpoena which should be served on WestFax
> later today or tomorrow.  Thank you.

**EXHIBIT**

_C_

tabbies®

1

**Courtney Porter**
Paralegal



Jamboree Center, 4 Park Plaza, Suite 1100, Irvine, CA 92614
Main 949.851.1100 • Direct 949.797.1237 • Fax 949.851.1212
www.paynefears.com • email: cporter@paynefears.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DocuSign Envelope ID: B9018AD2-D8B7-4ABE-B792-9AFA435499D8

| Attorney or Party without Attorney:<br>PAYNE & FEARS LLP<br>LEILANI JONES, ESQ.<br>4 PARK PLAZA SUITE #1100<br>IRVINE , CA 92614<br> Telephone No: 949-851-1100<br><br> Attorney For:   Plaintiff | | For Court Use Only |
|---|---|---|
| | Ref. No. or File No.:<br>4437.007 | |
| Insert name of Court, and Judicial District and Branch Court:<br>IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA | | |
| Plaintiff:   CRAFTWOOD II, INC. dba BAY HARDWARE<br>Defendant:   WURTH LOUIS AND COMPANY | | |

| PROOF OF SERVICE | Hearing Date:<br>10/16/2017 | Time:<br>10:00 AM | Dept/Div: | Case Number:<br>8:17-CV-00606(DOC)(KES) |
|---|---|---|---|---|

1.   *At the time of service I was at least 18 years of age and not a party to this action.*

2.   I served copies of the AMENDED SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSEPECTION OF PREMISES IN A CIVIL ACTION

3.   *a.   Party served:*     The Custodian of Records for WestFax, Inc.
     *b.   Person served:*   JUSTIN FIGUERINO, PERSON IN CHARGE

4.   *Address where the party was served:*   9200 E. MINERAL AVENUE SUITE 275, CENTENNIAL, CO 80112

5.   *I served the party:*
     a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon, Oct 02 2017 (2) at: 03:59 PM

                                    Recoverable cost Per CCP 1033.5(a)(4)(B)

6. *Person Who Served Papers:*
     a. BRIAN OLDS                                    d. *The Fee for Service was: $309.25*
     b. **FIRST LEGAL**                               e. I am: Not A Registered California Process Server
       600 W. Santa Ana Blvd., Ste. 101
       SANTA ANA, CA 92701
     c. (714) 541-1110

7.   *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

|                       |                       |
|-----------------------|-----------------------|
| 10/05/2017            | *Brian Olds*          |
| *(Date)*              | *(Signature)*         |



Judicial Council Form                    **PROOF OF**                    *1706436*
Rule 2.150.(a)&(b) Rev January 1, 2007       **SERVICE**                    *(11200234)*



**Samantha Foley**

| | |
|---|---|
| **From:** | Lem, Philip K. <pkl@paynefears.com> |
| **Sent:** | Thursday, November 30, 2017 11:59 AM |
| **To:** | Lem, Philip K. |
| **Subject:** | Ex. C |
| **Attachments:** | LT s. luskin 10.4.17 re westfax.pdf |

**Philip K. Lem**
Attorney

# P A Y N E & F E A R S

Payne & Fears LLP, 4 Park Plaza, Suite 1100, Irvine, CA 92614
Main 949.851.1100 • Direct 949.797.1201 • Fax 949.851.1212
www.paynefears.com • email: pkl@paynefears.com

**From:** Kayes, Tom [mailto:tkayes@sidley.com]
**Sent:** Wednesday, October 4, 2017 11:48 AM
**To:** Porter, Courtney K. <cporter@paynefears.com>
**Cc:** Luskin, Scott O. <SOL@paynefears.com>
**Subject:** RE: Wurth - AMENDED WestFax Subpoena

Scott:

A letter re: the amended WestFax subpoena.

Best,

**TOM KAYES**
Associate

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
+1 312 853 3293
tkayes@sidley.com
www.sidley.com

>> **From:** Porter, Courtney K. [mailto:cporter@paynefears.com]
>> **Sent:** Monday, October 02, 2017 2:06 PM
>> **To:** Kayes, Tom <tkayes@sidley.com>
>> **Cc:** Luskin, Scott O. <SOL@paynefears.com>
>> **Subject:** Wurth - AMENDED WestFax Subpoena

>> Mr. Kayes,

>> Attached please find an amended copy of the reissued WestFax subpoena which should be served on WestFax
>> later today or tomorrow.  Thank you.

1


EXHIBIT
E

**Courtney Porter**
Paralegal



PAYNE & FEARS

Jamboree Center, 4 Park Plaza, Suite 1100, Irvine, CA 92614
Main 949.851.1100 • Direct 949.797.1237 • Fax 949.851.1212
www.paynefears.com • email: cporter@paynefears.com

*************************************************************************************
**********
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*************************************************************************************
**********



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

AMERICA • ASIA PACIFIC • EUROPE

TKAYES@SIDLEY.COM
+1 312 853 3293

October 4, 2017

**Via Email Only**

Scott O. Luskin
Payne & Fears
1100 Glendon Avenue
Suite 1250
Los Angeles, CA 90024
sol@paynefears.com

Re:    <u>Craftwood II v. Wurth Louis and Company, No. 17-cv-00606</u>

Dear Scott:

I write to continue our meet-and-confer process related to Craftwood's subpoena on WestFax. I have reviewed the amended subpoena, which I received from your office by email on October 2, 2017.

The amended subpoena and our discussion has resolved some, but not all, of Wurth's concerns. First, the amended subpoena resolves the issue based on the geographical limitation in Rule 45(c)(2)(A) of the Federal Rules of Civil Procedure. Second, the representation in your email, dated September 29, 2017, that you will treat all documents produced as confidential pending entry of a protective order (while reserving your rights to argue any documents are not confidential) resolves Wurth's confidentiality concern.

Unresolved, however, is Wurth's objection based on the Stored Communications Act, 18 U.S.C. § 2702. The Act applies to WestFax because it applies to "electronic communication service[s]." *Id.* WestFax is such a service because it is a "service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). The statutory language, in my view, is dispositive. As you suggested, I read *KF Jacobsen & Co., Inc. v. Gaylor*, 947 F. Supp. 2d 1120 (D. Or. 2013). It did not convince me otherwise. It does not limit the Act's coverage to ISPs and other "public utility"-like entities. Nor could it, given that the Act's statutory text contains no such limitation.

Further, I am not persuaded that Wurth's *ability* to consent to disclosure under the Act will, absent such consent, convince the Court to overrule a valid objection based on the Act. Since Wurth does not consent and you did not identify any authority indicating that Craftwood can compel Wurth to consent, Wurth's ability to do so seems irrelevant.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

Finally, I do agree with your point that Craftwood is entitled to obtain any faxes of which it was an intended recipient. 18 U.S.C. § 2702(b)(1). We will not object to your receipt of such faxes.

Thus, our objection to the subpoena is now limited to WestFax producing to Craftwood faxes other than those intentionally sent to it. If you do not agree to limit your subpoena in accordance with this objection, we will file a motion to quash on that ground. Please let me know whether Craftwood will agree or if you would like to discuss the matter further. If I do not hear from you by October 11, 2017, I will assume that we are impasse.

Once again, I have contacted WestFax to ask that they refrain from producing documents in response to your subpoena until we have resolved these issues.

Sincerely yours,

Tom Kayes
Associate

cc: William B. Hayes, III

**Samantha Foley**

| | |
|---|---|
| **From:** | Lem, Philip K. <pkl@paynefears.com> |
| **Sent:** | Thursday, November 30, 2017 12:00 PM |
| **To:** | Lem, Philip K. |
| **Subject:** | Ex. F |

**Philip K. Lem**
Attorney

# PAYNE & FEARS

Payne & Fears LLP, 4 Park Plaza, Suite 1100, Irvine, CA 92614
Main 949.851.1100 • Direct 949.797.1201 • Fax 949.851.1212
www.paynefears.com • email: pkl@paynefears.com

---

**From:** Kayes, Tom [mailto:tkayes@sidley.com]
**Sent:** Wednesday, October 25, 2017 9:31 PM
**To:** Luskin, Scott O. <SOL@paynefears.com>; sqhayes@aol.com
**Subject:** RE: Craftwood II v Wurth Louis & Company

Bill,

We cannot confirm. We have reconsidered our position since the letter attached to Scott's email. We will respond with more detail soon.

**TOM KAYES**
Associate

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
+1 312 853 3293
tkayes@sidley.com
www.sidley.com

> **From:** Luskin, Scott O. [mailto:SOL@paynefears.com]
> **Sent:** Tuesday, October 24, 2017 4:23 PM
> **To:** sqhayes@aol.com
> **Cc:** Kayes, Tom <tkayes@sidley.com>
> **Subject:** Craftwood II v Wurth Louis & Company
>
> Bill,
>
> Thanks for the chat earlier.  Attached is the subpoena and a letter regarding the sole remaining objection to requests 1 and 2 for copies of the faxes.  You agreed to look into whether Westfax even has these documents, so Craftwood II and Wurth know if there is any real issue.  In the meantime, as we discussed, I think it makes sense to produce responsive documents that are not impacted by the objection.
>
> I assume Tom, counsel for Wurth, is fine with this plan, but I cc'd him so that he can confirm.



EXHIBIT
F

1

Thanks for your assistance.

Regards,

Scott

**Scott O. Luskin**
Partner

# PAYNE & FEARS

PAYNE & FEARS LLP  •  1100 Glendon Avenue, Suite 1250, Los Angeles, CA 90024
Direct 310.689.1764  •  Main 310.689.1750  •  Fax 310.689.1755
www.paynefears.com  •  email: sol@paynefears.com

*********************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*********************************************************************************************

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of December, 2017, a true and correct copy of the foregoing **DECLARATION OF SCOTT O. LUSKIN IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE: (1) CONTEMPT CITATION; (2) ORDER COMPELLING COMPLIANCE WITH SUBPOENA; AND (3) MONETARY SANCTIONS** was delivered by sending a copy of same via first class U.S. Mail, postage prepaid and via email to the following address:

Livia M. Kiser                                    Attorneys for Defendant
lkiser@sidley.com                          Wurth Louis and Company
Courtney A. Hoffmann
choffmann@sidley.com
Raechel Bimmerle
rbimmerle@sidley.com
Tom Kayes
tkayes@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Michael L. Mallow                           Attorneys for Defendant
mmallow@sidley.com                     Wurth Louis and Company
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Tel.: (213) 896-6666
Fax: (213) 896-6600

William Hayes, III                                    Attorney for Westfax, Inc.
257 Jackson Street
Denver, CO 80206
Tel.: (303) 514-0658
Email: sqhayes@aol.com

_/s/ Samantha Foley_
Samantha Foley

2017.12.01 Luskin Declaration re OSC.docx